Mary Martha ROBERTS, Appellant,

v.

The STATE of Texas, Appellee.

No. 60339.

Court of Criminal Appeals of Texas, Panel No. 1.

July 22, 1981.

---

# 162

Fred L. Leach, Amarillo, court appointed, for appellant.

Tom A. Curtis, Dist. Atty. and Steve Schiwetz, Asst. Dist. Atty., Amarillo, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, DALLY and TEAGUE, JJ.

## OPINION

TEAGUE, Judge.

Appellant appeals her conviction for the offense of "Interference with Child Custody." See V.T.C.A. Penal Code, Sec. 25.03. Her punishment was assessed by a jury at two years-probated.

At the time of the alleged offense, V.T.C.A. Penal Code, Sec. 25.03 provided:[1]

(a) A person commits an offense if he takes or retains a child younger than 18 years out of this state when he:

(1) knows that his taking or retention violates a temporary or permanent judgment or order of a court disposing of the child's custody; or

(2) has not been awarded custody of the child by a court of competent jurisdiction and knows that a suit for divorce, or a civil suit or application for habeas corpus to dispose of the child's custody, has been filed.

The indictment in this cause, in pertinent part, alleges that appellant did "knowingly and intentionally, [on or about the 19th day of August, A.D.1977], retain Tanya Renee Beardsley,[2] a child younger than 18 years

out of this state and the defendant knew that the retention of the child violated an order of a court disposing of the custody of said child namely, a judgment from the 47th District Court, Randall County, Texas cause No. 7717 dated July 6, 1967."

The "Practice Commentary" to the statute states in part:

This section adds a new offense to Texas criminal jurisprudence, one designed primarily to deal with the parental kidnapper but formulated broadly enough to cover anyone knowingly interfering with a court's custodial jurisdiction over children. ... Section 25.03 prohibits both taking and *retaining a child outside the state either in violation of a custody award,* Subsection (a)(1) or to defeat the court's jurisdiction in a custody case, Subsection (a)(2). (emphasis added)

*A summary of the facts shows the following.*

Beardsley was granted a divorce from his then wife, Mary Virginia Cook, on July 6, 1967, in Cause No. 7717 in Randall County. We are not informed, by this record, the style of the cause, nor is same alleged in the indictment. At the time of the divorce, Tanya was living with Beardsley, his grandparents and, on occasion, his mother, the appellant.

*The divorce decree or judgment was never offered or introduced into evidence during the trial of this cause.* Therefore, we do not know what the terms and conditions of same might show regarding the disposition of the custody of Tanya. By the testimony adduced, we learn that Beardsley was made the "managing conservator" of Tanya and his former wife, Mary Virginia Cook, was made the "possessory conservator." See, however, Presiding Judge Onion's dissenting opinion in *DeVary v. State,* Tex.Cr. App., 615 S.W.2d 739 (1981).

---

1. The statute has been amended, effective August 27, 1979. Subsection (a)(1) now provides: knows *that his taking or retention violates the* express terms of a judgment or order of a court disposing of the child's custody.

2. Appellant is the grandmother of Tanya Renee Beardsley, the natural child of her son, Harold Wayne Beardsley, III, hereinafter referred to simply as Beardsley. We hereinafter refer to the child simply as Tanya.

In 1971, Beardsley remarried and reobtained possession of Tanya by "snatching" her. Tanya lived with him, his then wife, Cecilia, and his other children, until 1977, when he and Cecilia separated. In late March or early April, 1977, the children then moved in with appellant at her Amarillo home. Appellant cared for the children during much of this period of time due to Beardsley's frequent absences while working as a long-haul truck driver. Beardsley gave written permission to appellant to control and care for Tanya and his fourteen year old son, Harold Wayne Beardsley, IV, during his absences. The son subsequently moved to Michigan in early June, 1977 to live with his maternal grandfather.

Appellant testified that in March, 1977, Beardsley brought Tanya to her home in Amarillo to stay for an indefinite period of time. Toward the end of school that year, Beardsley gave appellant permission to take Tanya to Colorado for a vacation, but the trip was to last for only six weeks. Appellant did take Tanya to Colorado for the vacation but did not return or send the child back after six weeks.

Sometime prior to August 19, 1977, Beardsley made a telephone call to appellant in Durango, Colorado and, according to his testimony, asked her to return Tanya to him. He stated that appellant's reply ". . . amounted to a no." Appellant testified that she received one telephone call from Beardsley asking her to return Tanya home to him by bus. When she refused, Beardsley told her that he would come to Colorado to talk to her about returning Tanya to him but she never saw him. Beardsley testified he did go to Colorado but was unsuccessful in locating Tanya or appellant. Soon after the call, appellant and Tanya moved from Durango to Pagosa Springs, Colorado "so that we could continue to make a living." Appellant did not deny receiving the above telephone call from Beardsley; in fact, she allowed the child to talk to him.

Appellant admitted that while in Colorado she filed for custody of Tanya. She denied that a former husband, a deputy sheriff in Pagosa Springs, prevented her arrest there, and also denied that the existence of an arrest warrant caused her to return to Texas when she did.

Appellant and the child remained in Colorado until September 2, 1977, when they returned to DeKalb, Texas, where appellant enrolled Tanya in school. In DeKalb, appellant and Tanya lived with appellant's mother and Beardsley's grandmother, Gera Bell Moore, until appellant was arrested on or about October 17, 1977.

■■■ The gist of the offense, as applied to the allegations here, is that appellant retained Tanya, a child younger than 18 years, out of the state when she knew that retaining Tanya violated a permanent judgment or order of a court disposing of Tanya's custody. As easily seen by the terms of the statute, it matters not in what jurisdiction the court judgment or order was rendered and entered, as long as it validly existed.[3] Appellant does not dispute there was a permanent court judgment or order disposing of Tanya's custody, nor does she dispute that she took Tanya from Potter County to the State of Colorado and retained her there. The judgment of divorce, disposing of the custody of Tanya, was rendered and entered in Randall County. Appellant's admission that she didn't question Beardsley's assertions that he had lawful custody of Tanya and that she received Beardsley's telephone call demanding Tanya's return establish that she had knowledge that her retention of Tanya in Colorado was a violation of a valid order by a Texas court adjudicating custody of Tanya.

It was therefore incumbent upon the State to prove the following elements to convict appellant:

(a) Appellant retained a child younger than 18 years out of Texas when she

---

3. Venue in this cause is proper in any county in which the offender is found or in which an element of the offense occurs. See Art. 13.01, V.A.C.C.P. Since one element of this offense is the violation of a court order giving Beardsley custody, the violation "occurs" in the county of Beardsley's residence.

(1) knew that the retention violated a permanent judgment of a court disposing of the child's custody.

\*     \*     \*     \*     \*     \*

We find after carefully reviewing the evidence that appellant did commit the criminal offense of interference with child custody, as alleged in the indictment.

We are also confronted with the question of whether the trial court had jurisdiction of this offense.

Mr. Justice Oliver Wendell Holmes, in discussing the objective territorial theory, said in *Strassheim v. Daily*, 221 U.S. 280, 31 S.Ct. 558, 560, 55 L.Ed.2d 735, 738 (1911):

"Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its grasp.

This principle is further elaborated in 22 C.J.S. Criminal Law § 134:

If a crime covers only the conscious act of the wrongdoer, regardless of its consequences, the crime takes place and is punishable only where he acts; but, if a crime is defined so as to include some of the *consequences* of an act, as well as the act itself, the crime is generally regarded as having been committed where the consequences occur, regardless of where the act took place, and under a statute so providing a person who commits an act outside the state which affects persons or property within the state, and which, if committed within the state, would be a crime, is punishable as if the act were committed within the state. (emphasis added)

V.T.C.A. Penal Code, Sec. 1.04 provides in part:

(a) This state has jurisdiction over an offense that a person commits by his own conduct or the conduct of another for which he is criminally responsible if:

(1) either the conduct or a result that is an element of the offense occurs inside this state;

\*     \*     \*     \*     \*     \*

Thus, the above statutory provisions incorporate the objective territorial theory stated in *Strassheim v. Daily*, supra. See also *United States v. Ricardo*, 619 F.2d 1124, 1129 (5th Cir. 1980).

In cases prosecuted under V.T.C.A. Penal Code, Sec. 25.03, the act of retaining the child outside the state, in violation of a valid Texas court order, has the necessary consequence and detrimental effect and result of frustrating the power of the Texas judiciary and of denying a Texas resident the possession of a child to which he has been awarded the legal custody. This interest in protecting the viability of its judgments and the rights of possession of its residents gives the State of Texas jurisdiction to punish the acts of a person committed wholly outside the territorial boundaries of Texas when those acts thwart this valid interest.

The act of appellant retaining Tanya in Colorado *resulted* in violation of a valid judgment of a Texas court that had awarded Beardsley custody of Tanya. For these reasons, Texas has jurisdiction of the subject matter of this cause, and is justified in punishing the acts of appellant now that she is "within its grasp."

The judgment of conviction is therefore affirmed for the above reasons.