Matthew McGOWAN, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 14–93–01098–CR, 14–93–01099–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 12, 1996.

Opinion Overruling Rehearing
Feb. 13, 1997.

Gerald K. Payte, Robert A. Scardino, Jr., George McCall Secrest, Jr., Houston, for appellant.

Gerald K. Payte, Robert A. Scardino, Jr., George McCall Secrest, Jr., Cathleen C. Herasimchuk, Houston, for appellant on rehearing.

Dan McCrory, Houston, for appellee.

Before YATES, FOWLER and O'NEILL, JJ.

## MAJORITY OPINION

YATES, Justice.

A jury convicted appellant, Matthew McGowan, of two counts of commercial bribery, TEX.PENAL CODE ANN. § 32.43(b) (Vernon 1989),[1] and one count of theft of trade secrets. *Id.* § 31.05. The trial court assessed punishment for each offense at five years confinement. In five points of error, appellant challenges the sufficiency of the evidence and alleges the trial court erred in (1) denying his motion to dismiss the charges against him for want of jurisdiction; (2) denying a motion to dismiss because the theft of trade secrets statute is unconstitutionally vague and overbroad as applied; (3) failing to instruct the jury that a trade secret must be a secret; and (4) commenting on the weight of the evidence in the text of the jury charge. We affirm in part and reverse in part.

## BACKGROUND

During the course of a sting operation conducted by a firm specializing in the investigation of white collar crimes, appellant, Matthew McGowan, a Dresser–Rand salesman in Seattle, Washington, acquired drawings of highly technical machinery parts from another Dresser–Rand office and transmitted these drawings to Kenneth Weightman, a secondary parts manufacturer who was not authorized to manufacture and sell the parts. In return, Weightman wired money to McGowan. Weightman agreed to manufacture these parts for a dummy corporation created as part of the sting operation.

## JURISDICTION

■ In his first point of error, appellant maintains Texas lacked jurisdiction because the crimes he allegedly committed do not fall within the limits of Texas's territorial jurisdiction as set forth in Section 1.04 of the Texas Penal Code. Section 1.04 states that Texas "has jurisdiction over an offense that a person commits by his own conduct or the conduct of another for which he is criminally responsible if . . . either the conduct or a

result that is an element of the conduct occurs inside this state." *Id.* § 1.04. Appellant contends the State of Texas does not have jurisdiction to prosecute him for either commercial bribery or theft of trade secrets because neither "the conduct or a result that is an element" of either offense occurred in Texas.

An employee commits the offense of commercial bribery if, without the consent of his employer, he intentionally or knowingly solicits, accepts, or agrees to accept any benefit from another person on agreement or understanding that the benefit will influence his conduct in relation to the affairs of his employer. *Id.* § 32.43. Appellant contends the offense of commercial bribery is complete once the employee accepts the benefit or agrees to have his conduct influenced by a benefit, whether or not the employee subsequently acts in furtherance of the agreement. Therefore, appellant argues, the offense of commercial bribery was complete when he allegedly took the bribe, regardless of whether he ever transmitted the drawings to Weightman. He further maintains that because he lived and worked in the State of Washington when he allegedly took the bribe, neither an element nor a result that is an element of the offense of commercial bribery took place in Texas. Therefore, he claims his actions and their results did not subject him to the territorial jurisdiction of this State. The State, on the other hand, maintains that Texas had jurisdiction over the offense because appellant accepted money that was generated from a location within the State of Texas.

■ Contrary to the State's argument, the origin of the benefit is not an element of commercial bribery. Section 1.04 combines subjective and objective territorial principals. *Boetscher v. State,* 782 S.W.2d 954 (Tex. App.—Amarillo 1990), *rev'd on other grounds sub nom., Ex Parte Boetscher,* 812 S.W.2d 600 (Tex.Crim.App.1991). Jurisdiction is conferred over offenses commenced within the state but completed outside the state (subjective) and for offenses commenced out-

---

1. The crimes for which appellant was convicted were committed before September 1, 1994, the effective date of the revised penal code. *See* Acts

1993, 73rd Leg., Ch. 900, § 1.18(b). Therefore, all references to the penal code are to the code in effect at the time the crime was committed.

side the state but consummated within (objective). *Id.* The primary policy considerations underlying section 1.04 are that Texas should have a substantial interest in or connection with the criminal event it seeks to prosecute and that law enforcement should be facilitated by plugging gaps in existing law when a course of conduct goes beyond the boundaries of a single state. TEX.PENAL CODE ANN. § 1.04 Practice Commentary (Vernon 1974).

In determining whether Texas had jurisdiction in an interference with child custody case, the Court of Criminal Appeals in *Roberts v. State*, 619 S.W.2d 161, 164 (Tex.Crim. App.1981), considered where an act occurs and where the result of an act occurs.

> If a crime covers only the conscious act of the wrongdoer, regardless of its consequences, the crime takes place and is punishable only where he acts; but, if a crime is defined so as to include some of the *consequences* of an act, as well as the act itself, the crime is generally regarded as having been committed where the consequences occur, regardless of where the act took place . . . (emphasis in original).

*Roberts,* 619 S.W.2d at 164 (quoting 22 C.J.S. Criminal Law section 134, current version at section 162).

■ Here, the State concedes, and we agree, that commercial bribery is a conduct oriented offense, as opposed to a result oriented offense. *See, e.g., Hubbard v. State,* 668 S.W.2d 419 (Tex.App.—Dallas 1984), *rev'd on other grounds,* 739 S.W.2d 341 (Tex. Crim.App.1987) (noting that bribery offense focuses on the mental state of the actor); *Cerda v. State,* 750 S.W.2d 925 (Tex.App.— Corpus Christi 1988, pet. ref'd) (holding that offense of bribery is complete once there is an agreement to violate a legal duty). In other words, the crime is defined to cover the conscious act of the wrongdoer, rather than the consequences of the act. For Texas to have jurisdiction, McGowan must have solicited, accepted or agreed to accept a benefit in

Texas. Although money was wired to McGowan from Texas and, presumably in exchange, documents were sent to Texas, these acts are not elements of the offense of commercial bribery. There is no circumstantial or direct evidence indicating that a benefit was solicited, accepted or agreed to in Texas.[2] Thus, jurisdiction may exist in Washington, but not in Texas.

■ Appellant also contends that Texas was without jurisdiction for the offense of theft of a trade secret. Like commercial bribery, appellant maintains the offense of theft of a trade secret is not a result-oriented crime and is complete when the offending party attempts to communicate the secret whether or not the secret is successfully communicated. In this case, he maintains, no element of the offense occurred in Texas because the offense was complete in Washington, the state from which he transmitted the drawings to Weightman. We disagree.

A person commits the offense of theft of trade secrets "if, without the owner's effective consent, he knowingly: (1) steals a trade secret; (2) makes a copy of an article representing a trade secret; or (3) communicates or transmits a trade secret." TEX.PENAL CODE ANN. § 31.05(b) (Vernon 1989). Here, appellant transmitted alleged trade secrets to Weightman in Texas by a facsimile machine. Thus, the issue is whether the transmission occurred in Texas, in Washington, or in both.

The verb "transmit" means "[t]o send or transfer from one person or place to another, or to communicate." BLACK'S LAW DICTIONARY 1344 (5th ed. 1979). A logical extension of this definition is that a transmission is complete when the party to whom the transmission is directed actually receives the transmission. As such, the transmittal occurred in both Texas and Washington, but was not complete until the drawings actually reached Weightman in Houston. Because the offense was complete only after the drawings were transmitted into Texas, an element of the offense occurred within Texas

---

2. In fact, the circumstantial evidence indicates that the benefit was accepted outside of the State of Texas. Weightman sent McGowan three Western Union money transfers. These transfers originated in Houston, Texas and were received in Anchorage, Alaska and Olean, New York. In addition, a check drawn on Weightman's bank in Houston was deposited by McGowan in an account in Washington.

giving Texas jurisdiction under Section 1.04 of the penal code.

In sum, because appellant's conduct in relation to the offense of theft of trade secrets fell within the territorial requirements of Section 1.04, the trial court did not err in denying appellant's motion to dismiss the theft of trade secrets case for want of jurisdiction. However, because we have found that none of appellant's conduct concerning the offense of commercial bribery occurred in Texas, the trial court erred in denying appellant's motion to dismiss the commercial bribery case. Accordingly, appellant's first point of error is sustained in part and overruled in part.

## CONSTITUTIONALITY OF TRADE SECRETS STATUTE

■ In his second point of error, appellant maintains the trial court erred in denying a motion to dismiss the indictment because Section 31.05(b) is vague and overbroad as applied, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and the Due Course of Law provision of the Texas Constitution. Although Weightman filed a motion raising the constitutionality of the statute, appellant did not. Weightman's motion does not preserve error for appellant. *Martinez v. State*, 833 S.W.2d 188, 191 (Tex.App.—Dallas 1992, pet. ref'd). Although appellant contends he preserved error by requesting an instructed verdict and objecting to the jury charge, appellant's objection in no way raised the constitutionality of the statute as applied to him. Moreover, he cites no authority indicating how such measures preserve a claimed right of dismissal based on a constitutional challenge. Because no specific, timely objection was made, this point of error was not preserved for our review. *Curry v. State*, 910 S.W.2d 490, 496 (Tex.Crim.App.1995) (holding no error is preserved when appellant fails to specifically object at trial that statute was unconstitutional as applied because of

vagueness). Appellant's second point of error is overruled.

## SUFFICIENCY OF THE EVIDENCE

■ In his third point of error, appellant contends the evidence is legally insufficient[3] to support his conviction for theft of trade secrets. In reviewing the sufficiency of the evidence, this court must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim. App.), *cert. denied*, 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993); *Soto v. State*, 864 S.W.2d 687, 691 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). The standard of review is the same for both direct and circumstantial evidence. *Chambers v. State*, 711 S.W.2d 240, 245 (Tex.Crim.App.1986). In conducting a sufficiency review, the appellate court is not to re-evaluate the weight and credibility of the evidence, but to act only to ensure the jury reached a rational decision. *Muniz*, 851 S.W.2d at 246.

The jury charge tracked the language of Section 31.05 by asking the jury to consider whether appellant knowingly communicated or transmitted trade secrets, namely, specified technical drawings, to Weightman without the effective consent of the owners. The charge further defined a trade secret as "the whole or any part of any scientific or technical information, design, process, procedure, formula, or improvement that has value and that the owner has taken measures to prevent from becoming available to persons other than those selected by the owner to have access for limited purposes." *See* TEX.PENAL CODE ANN. § 31.05(a)(4).

The record reflects that at the direction of Eugene Holler, an engineer with Dresser–Rand, the undercover operative investigating

3. At the time appellant filed this appeal, the Court of Criminal Appeals had not determined whether the intermediate courts of appeals of this State could conduct a factual sufficiency review of the evidence supporting a conviction. The Court of Criminal Appeals recently authorized such a review in *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App.1996). Nevertheless, we decline to conduct a factual sufficiency review in this instance because appellant did not request such a review prior to oral submission.

Weightman requested specific Dresser–Rand part numbers from Weightman. Holler selected some of these parts because they were high technology equipment and not readily available outside the Dresser–Rand facility located in Oleans, New York. Thereafter, appellant contacted the Oleans office and indicated he needed the drawings for select part numbers to service an existing customer in Alaska. The Oleans office sent the drawings to Dresser–Rand's Seattle repair shop where appellant worked. Within days, Weightman received several facsimiles of the drawings, all of which were seized during a subsequent search of Weightman's office. The search also revealed documentation of three wire transfers of funds from Weightman to appellant via Western Union within a short time of Weightman's receipt of the facsimiles.

Appellant does not dispute that he made a copy of the drawings and transmitted the drawings to Weightman. Appellant maintains the evidence fails to show that the drawings he transmitted to Weightman were secret from their inception and remained secret throughout that entire time. Appellant contends the evidence shows the drawings were widely and legally replicated throughout the secondary machine parts industry, and that the security measures that Dresser–Rand instituted in the late 1980's were instituted after the drawings were in the public domain and no longer trade secrets. Appellant does not contest the adequacy of the current security measures, but maintains these measures were not in place when appellant obtained the drawings alleged to be a trade secret.

The core element of a trade secret is that it must remain a secret, although absolute secrecy is not required. *Schalk v. State*, 823 S.W.2d 633, 640 (Tex.Crim.App.1991), *cert. denied*, 503 U.S. 1006, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992). There must be a substantial element of secrecy and the owner must have taken measures to prevent the trade secret from becoming available to persons other than those selected by the owner to have access for limited purposes. *Id.* at

638, 640. To determine whether the measures taken were effective to maintain substantial secrecy of the drawings, the following factors are relevant: (1) non-disclosure agreements, (2) plant security, (3) access to information, and (4) other measures. *Id.* at 636–37. The technical drawings in this case were drawn between 1973 and 1985, and the 1973 drawing was redrawn in 1985. Therefore, we must determine whether the drawings remained substantially secret from 1973 to 1992, the year appellant transmitted the drawings to Weightman, by reviewing the adequacy of Dresser–Rand's security measures in regards to those documents.

Dresser-Rand and its predecessors required all new employees, including appellant, to sign a conflict of interest agreement [4] in which new employees pledged,

During my employment and thereafter, I shall keep secret and confidential and not disclose to any unauthorized person, any secret or confidential information of the **COMPANY** that I obtain as a result of or during my employment.

Eugene Holler, Kathie Driscoll, and Dale Thibodeaux, all long-time employees of Dresser–Rand, testified that drawings were kept under lock and key subject to limited access by persons designated to receive such information. Visitors to the facility were escorted by authorized personnel. They further stated that Dresser–Rand always utilized security guards and recently implemented additional security measures such as security codes. Holler testified that Dresser–Rand requires a confidentiality agreement with third-party manufacturers who receive mechanical drawings that prohibit vendors from utilizing the drawings for purposes other than the use authorized by Dresser–Rand. Driscoll testified that Dresser–Rand had been placing red "trade secret" stamps on drawings that it released since 1969, the year she became employed by the company. We find these measures provided adequate security during the period in question and were effective to maintain the secrecy of the documents.

---

4. New security measures also now require employees to sign a Code of Conduct in which they pledge not to receive gifts in exchange for proprietary information.

Although the record reflects that many Dresser–Rand drawings were available in the secondary market, Holler's testimony regarding the selection of these particular drawings, the security measures implemented during this time frame, and appellant's actions in retrieving these particular drawings from a secured facility support the jury's finding that the documents appellant transmitted or communicated were, in fact, trade secrets. Appellant's third point of error is overruled.

## JURY INSTRUCTION

In his fourth point of error, appellant maintains the trial court erred by failing to instruct the jury that a trade secret must be a secret. Appellant further contends his defensive theory of the case was that the drawings had not remained secret from their inception, and as such he was entitled to a jury instruction on this defensive issue.

A trial court should define in the jury charge any legal phrase that the jury must necessarily use in properly resolving the issues, and if statutorily defined, the trial court should provide the statutory definition for that term. *Nguyen v. State*, 811 S.W.2d 165, 167 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd). Additionally, a defendant is entitled to an instruction on every defensive issue raised by the evidence, whether such evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may or may not believe about the credibility of the evidence. *Miller v. State*, 815 S.W.2d 582, 585 (Tex.Crim.App.1991); *Thacker v. State*, 889 S.W.2d 380, 398 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd), *cert. denied*, —— U.S. ——, 116 S.Ct. 57, 133 L.Ed.2d 21 (1995). A defendant, however, is not entitled to have an instruction worded exactly as he requests, as long as the charge correctly states the law and tracks the statute. *Thacker*, 889 S.W.2d at 399. When a requested instruction is adequately covered by the charge submitted, there is no error in refusing it. *Id.*

In this case, the definition of trade secret in the charge tracked the definition set forth in section 31.05 of the Texas Penal Code and correctly stated the law.

To be a "trade secret" within the clear meaning of Section 31.05, the information, design, process, formula or improvement must not only be a secret, but must also be generally unavailable to the public and it must give one who uses it an advantage over competitors that do not know of or use the trade secret. *Leonard v. State*, 767 S.W.2d 171, 175 (Tex.App.—Dallas 1988), *aff'd*, *Schalk v. State*, 823 S.W.2d 633 (Tex.Crim. App.1991), *cert. denied*, 503 U.S. 1006, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992). A fair reading of this section suggests that to qualify as a trade secret, the article in question must (1) be all or part of scientific or technical information, (2) be of value to the owner, (3) be protected from access by measures taken by the owner to all, except those selected by the owner for limited purposes. *Id.* Thus, implicit in the definition given by the court was the requirement that the documents be secret. Further, because the jury was required to find that the owner of the documents took measures to prevent the documents from becoming available to anyone other than those persons selected by the owner for limited purposes, the definition of trade secrets in the charge necessarily included appellant's requested definition that "a substantial element of secrecy must have existed to the date of [the] alleged theft." Thus, the trial court did not err in refusing appellant's requested instruction on the secrecy of a trade secret. Appellant's fourth point of error is overruled.

## COMMENT ON THE WEIGHT OF THE EVIDENCE

In his fifth point of error, appellant contends the trial court commented on the weight of the evidence in the text of the jury charge by assuming that the drawings in question were trade secrets. A jury charge should set forth the applicable law of the case without expressing an opinion on the weight of the evidence, summing up the testimony, or discussing the facts or using jury argument to arouse the sympathy or cite the passions of the jury. TEX.CODE CRIM.PROC. ANN. art. 36.14 (Vernon Supp.1996). A trial court should never give the jury an instruction that constitutes a comment on the ele-

ments of the alleged offense, or assumes a disputed fact. *Grady v. State*, 634 S.W.2d 316, 317 (Tex.Crim.App.1982); *Richardson v. State*, 766 S.W.2d 538, 542 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd). A charge that assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous. *Whaley v. State*, 717 S.W.2d 26, 32 (Tex.Crim.App.1986); *Richardson*, 766 S.W.2d at 541. In reviewing a charge, the appellate court is to read the charge as a whole in order to "flesh out and explain the application paragraph." *Doyle v. State*, 631 S.W.2d 732, 737 (Tex. Crim.App.1980) (opinion on reh'g); *Jordan v. State*, 782 S.W.2d 524, 525 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd).

The trial court instructed the jury in the application paragraph as follows:

> Now, if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, the defendant, Matthew McGowan, on or about the 8th day of June, 1992, did knowingly communicate or transmit to Kent Weightman a trade secret namely: technical information ... owned by Eugene Holler, without the effective consent of the owner, then you will find the defendant guilty as charged in the indictment.

Appellant contends this paragraph is a comment on the weight of the evidence because it fails to require the jury to find that the drawings in question are trade secrets, and therefore, assumes the specific drawings are trade secrets.

We disagree. The trial court directed the jury's attention to their duty to determine whether the drawings were in fact trade secrets by instructing the jury of the statutory definition of "trade secret" and by further instructing the jury to find each element beyond a reasonable doubt in order to convict. Thus, the jury could have logically inserted the statutory definition of trade secret into the application paragraph in decid-

ing whether the drawings were trade secrets. *See Collins v. State*, 800 S.W.2d 267 (Tex. App.—Houston [14th Dist.] 1990, no pet.) (jury charge not a comment on evidence); *Francis v. State*, 746 S.W.2d 276, 278 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (same). Therefore, the court's charge did not assume the documents were trade secrets, but instructed the jurors to apply the statutory definition in determining whether the drawings were trade secrets. Because the trial court did not comment on the weight of the evidence by submitting the charge in its present form, we overrule appellant's fifth point of error.

Accordingly, the judgment in cause number 653937 is affirmed. The judgment in cause number 647407 is reversed and the cause remanded to the trial court with instruction to dismiss the indictment.

## OPINION ON REHEARING

In his motion for rehearing, appellant argues for the first time that no trial objection was necessary to preserve the constitutional question for review. Appellant quotes the following passage: "Questions involving the constitutionality of a statute upon which a defendant's conviction is based should be addressed by appellate courts, even when such issues are raised for the first time on appeal." *Rabb v. State*, 730 S.W.2d 751, 752 (Tex.Crim.App.1987) (citing *Moore v. State*, 672 S.W.2d 242 (Tex.App.—Houston [14th Dist.] 1984, no pet.)). Appellant notes the courts of appeals of this state have often utilized the "*Rabb* rule." *See, e.g., Long v. State*, 903 S.W.2d 52 (Tex.App.—Austin 1995) (facial constitutional challenge to the anti-stalking statute), *rev'd*, 931 S.W.2d 285 (Tex. Crim.App.1996)[1]; *Prater v. State*, 903 S.W.2d 57, 59 (Tex.App.—Fort Worth 1995, no pet.) (challenge to the statute requiring mandatory assessment of punishment in non-death penalty capital murder cases); *Webb v.*

---

1. In *Long*, the Austin Court of Appeals addressed the appellant's facial challenge to the anti-stalking statute, but it declined to address the appellant's contention the statute was unconstitutionally vague as applied. *Long*, 903 S.W.2d at 52. The Court of Criminal Appeals addressed only the facial challenge to the statute. Concerning whether the issue was properly preserved for

appeal, the Court simply noted "Although appellant did not raise his constitutional challenge at trial, the Court of Appeals held it appropriate to address his facial attack on the statute for the first time on appeal. The State does not challenge that holding." *Long*, 931 S.W.2d at 287. The Court ultimately concluded the statute was unconstitutional on its face. *Id.* at 297.

*State*, 899 S.W.2d 814, 818–19 (Tex.App.—Waco 1995, pet. ref'd) (refusing to apply *Rabb* to a constitutional challenge to a statute under which the appellant was arrested).[2]

Pointing to this line of cases, appellant argues that our reliance on *Curry v. State*, 910 S.W.2d 490 (Tex.Crim.App.1995) is misplaced. *Curry* held the appellant failed to preserve for review his constitutional challenge to the death penalty sentencing procedure in the Code of Criminal Procedure because the appellant failed to make a specific, timely objection. *Id.* at 496. Appellant argues that *Curry*, and the cases it relies upon, deal only with attacks upon a procedural statute, while the *Rabb* line applies to penal statutes under which the defendant has been convicted. Because appellant attacks the penal statute upon which appellant's conviction is based, he argues *Curry* does not apply.

We disagree with the procedural/penal distinction drawn by appellant. One of the cases relied upon in *Curry* held that "[b]ecause Article 37.071 [the death penalty sentencing procedure statute] was not facially unconstitutional, nor was it 'void ab initio,' appellant was required to object at trial in order to preserve any error for purposes of appeal." *Garcia v. State*, 887 S.W.2d 846, 861 (Tex.Crim.App.1994) (footnote omitted), *cert. denied*, —— U.S. ——, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995). Both *Curry* and *Garcia* relied upon another case for the proposition that "even constitutional errors may be waived by the failure to object at trial." *Briggs v. State*, 789 S.W.2d 918, 924 (Tex.Crim.App.1990). The Court of Criminal Appeals has repeatedly applied the "*Briggs* rule." *See, e.g., Broxton v. State*, 909 S.W.2d 912, 918 (Tex.Crim.App.1995). The *Briggs*

line of cases clearly indicates that unless the statute is facially unconstitutional, or *void ab initio*, one must preserve error for appeal. Nevertheless, we believe this line of cases is consistent with the *Rabb* line of cases.

We begin with the Court of Criminal Appeals explanation of forfeitable rights in *Marin v. State*, 851 S.W.2d 275 (Tex.Crim.App. 1993). The *Marin* court stated:

> [O]ur system may be thought to contain rules of three distinct kinds: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request. In the present context the most important thing to remember about the Texas law of procedural default is that it only applies to the last category.

*Id.* at 279.[3]

The *Marin* court described the first category of absolute rights as "nonwaivable, nonforfeitable systemic requirements" that are "essentially independent of the litigant's wishes." *Marin*, 851 S.W.2d at 279. These absolute rights cannot be waived or forfeited by the parties. *Id.* As the "clearest" example of absolute rights, the *Marin* court pointed to laws that affect the jurisdiction of the courts. *Id.*

The second category of rights are those "widely considered so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection in the system." *Id.* at 278. A principle characteristic of these rights is that they are not forfeited by inaction alone and a criminal

---

2. *Raab* has only been cited by the Court of Criminal Appeals twice, and both citations were found in concurring opinions. *See Ieppert v. State*, 908 S.W.2d 217, 221 (Tex.Crim.App.1995) (Baird, J., concurring); *Black v. State*, 816 S.W.2d 350, 370 (Tex.Crim.App.1991) (Campbell, J., concurring).

3. The Court of Criminal Appeals has applied this framework a number of times since *Marin*. *See, e.g., Reyes v. State*, 938 S.W.2d 718, 720–21 (Tex. Crim.App.1996) (*Geesa* reasonable doubt instruction is an absolute right that may not be forfeited); *Rhoades v. State*, 934 S.W.2d 113, 121 (Tex. Crim.App.1996) (challenge to conflicting versions of death penalty sentencing procedure statute did

not fall under absolute or waivable-only right) (plurality opinion); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App.1996) (failure to object to a jury argument or failure to pursue adverse rule forfeits the right to complain about the jury argument on appeal); *Ieppert v. State*, 908 S.W.2d 217, 220 (Tex.Crim.App.1995) (the constitutional prohibition against ex post facto legislation is an absolute prohibition); *Powell v. State*, 897 S.W.2d 307 (Tex.Crim.App.1994) (legislatively mandated effective date of statute is absolute systemic feature not subject to waiver), *cert. denied*, —— U.S. ——, 116 S.Ct. 54, 133 L.Ed.2d 19 (1995).

defendant must expressly relinquish the right. *Id.* 278–79.

The final category are those rights that must be expressly implemented before they will inure to the benefit of the litigant. *Id.* at 278. The majority of evidentiary and procedural rules are of this type: "[T]he rights of litigants in our system of adjudication are usually forfeited by a failure to exercise them." *Id.* Applying this framework, we now discuss how *Rabb* interacts with *Briggs*.[4]

We have found one decision discussing the interaction between the *Rabb* rule and the *Marin* framework. *Webb*, 899 S.W.2d at 818. In *Webb*, the appellant argued section 25.07 of the Texas Penal Code was unconstitutionally vague. *Id.* at 817. The court, *sua sponte*, discussed whether the issue was preserved for review:

> We recognize that "[q]uestions involving the constitutionality of a statute upon which a defendant's conviction is based should be addressed by appellate courts, even when such issues are raised for the first time on appeal." *See Rabb v. State*, 730 S.W.2d 751, 752 (Tex.Crim.App.1987). However, Webb's attack is not on the "statute upon which [his] conviction is based." Rather, he complains that the trial court erred in failing to suppress evidence because the search of his person and seizure of the evidence were based on a statute that he alleges is unconstitutional. In our view, the *Rabb* rule is properly applied in instances where the questioned statute affects the jurisdiction of the court to render a judgment against the defendant, *i.e.*, when the statute affects "the power of the court over the 'subject matter' of the case ... coupled with 'personal'

jurisdiction over the accused." If the challenge is valid, the judgment is void because an unconstitutional statute cannot confer authority upon the court to act. *See Reyes v. State*, 753 S.W.2d 382, 383 (Tex.Crim. App.1988). Thus, the *Rabb* rule is a corollary of the rule that the jurisdiction of the court is a "category one" right that cannot be waived and may be questioned at any time.

*Webb*, 899 S.W.2d at 818 (some citations omitted). Because it concluded that a statute providing for the arrest of an individual does not go to the "judicial power" of the trial court to enter and enforce a judgment, the *Webb* court held the appellant did not preserve the complaint for appeal. *Id.*

We agree with this reasoning, but we add to it the distinction enunciated in *Briggs*: an appellant is not required to object at trial if he or she is challenging the facial constitutionality of the statute or arguing the statute is *void ab initio*. *Briggs*, 789 S.W.2d at 924. This is because only a facial constitutional challenge affects the jurisdiction of the court to render a judgment against the defendant. *See Casares v. State*, 768 S.W.2d 298, 299 (Tex.Crim.App.1989) ("[A]n unconstitutional statute is void from its inception and cannot provide a basis for any right or relief." (quoting *Rose v. State*, 752 S.W.2d 529, 553 (Tex.Crim.App.1987) (opinion on rehearing))); *Reyes v. State*, 753 S.W.2d 382, 383 (Tex.Crim.App.1988) ("[A] void law is no law and confers no rights, bestows no power on anyone and justifies no act performed under it."). On the other hand, a constitutional challenge to a statute *as applied* does not affect the jurisdiction of the court. The statute does confer upon the court the power to act, although a challenge to the constitu-

---

4. Certain language in the opinion suggests that the Court of Criminal Appeals decisions prior to *Marin* are not in conflict. The court stated in *Marin*:

> Since its adoption in 1986, we have regularly applied [Rule 52(a)] only in cases of forfeitable trial rights and never to the violation of fundamental systemic requirements or to the infringement of rights so important that their implementation is mandatory absent an express waiver.

*Marin*, 851 S.W.2d at 280. The *Marin* court did not discuss in great detail where constitutional challenges fall in this category. It did point out,

however, that many constitutional rights fall into the category of forfeitable rights.

> When we say "that even constitutional guarantees can be waived by failure to object properly at trial," we mean that some, not all, constitutional rights may be forfeited. On the other hand, certain, relatively few, rights must be protected by the system's impartial representatives unless expressly waived by the party to whom they belong. Determining which category a right occupies will usually settle the question of procedural default in the context of a particular case.

*Id.* at 279 (citation omitted).

tionality as applied may constitute a defense to a conviction under that statute. Thus, a challenge to the constitutionality of a statute "as applied" is not a nonwaivable, absolute requirement or prohibition. We conclude that a challenge to the constitutionality of a statute as applied falls into the class of rights that may be forfeited by failure to assert them.

Because appellant in this case contests only the constitutionality of the statute as applied, appellant was required to object at trial. Appellant failed to meet this burden. We overrule appellant's first point of error.

Appellant also contends this Court should have conducted a factual sufficiency review of the evidence. *See Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App.1996). We denied appellant's post-submission brief requesting a factual sufficiency review. In our original opinion we stated, "we decline to conduct a factual sufficiency review in this instance because appellant did not request such a review prior to oral submission." Nevertheless, appellant renews the request to make such a review.

■■■ We again decline to review the factual sufficiency of the evidence. Appellant did not raise this point of error in his original brief. Post-submission briefs containing new points of error will be considered only with leave of the appellate court. *Rochelle v. State*, 791 S.W.2d 121, 124 (Tex.Crim.App. 1990); *see also Wilson v. State*, 811 S.W.2d 700, 702 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). "The idea that a party may *force* a new issue on an appellate court after briefs have been filed is foreign to the rules ..." *Rochelle*, 791 S.W.2d at 124. Appellant did not make the factual sufficiency argument in his original brief, and thus, we decline to address it.

The motion for rehearing is overruled.

### Dissenting Opinion by Justice O'Neill filed December 12, 1996.

O'NEILL, Justice, dissenting.

Because I believe the trial court erred in failing to include an instruction to the jury that a "trade secret" must be a secret, I respectfully dissent. I concur in the remainder of the majority opinion.

The court's charge is essential to the jury's deliberations, therefore "a charge must include an accurate statement of the law." *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994) (citing *Cane v. State*, 698 S.W.2d 138 (Tex. Crim. App. 1985)). In *Schalk v. State*, the Court of Criminal Appeals held that "it is axiomatic that the core element of a trade secret must be that it remains a secret." 823 S.W.2d 633, 640 (Tex. Crim. App. 1991), *cert. denied*, 503 U.S. 1006, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992). The court acknowledged that "Texas trade secret law has its origins in the civil law arena." *Id.* at 636 (citing *BPI Systems, Inc. v. Leith*, 532 F.Supp. 208 (W.D.Tex. 1981))(Fifth Circuit case applying Texas law utilizing the trade secret definition from the Restatement of Torts, citing *Hyde Corp. v. Huffines*, 158 Tex. 566, 314 S.W.2d 763, *cert. denied*, 358 U.S. 898, 79 S.Ct. 223, 3 L.Ed.2d 148 (1958)). In *Stewart & Stevenson Services, Inc. v. Serv-Tech*, 879 S.W.2d 89, 95 (Tex.App.–Houston [14th Dist.] 1994, writ denied), this court approved the trial court's instruction to the jury based upon the RESTATEMENT (FIRST) OF TORTS § 757, comment b, which provides in pertinent part as follows:

> The subject matter of trade secret must be secret. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret. Matters which are completely disclosed by the goods which one markets cannot be his secret.

*Id.* at 95. The court concluded: "From all the cases we have been able to find, it appears to be well settled that in order to be entitled to common-law protection, a trade secret must be *secret* .... we conclude that there is no cause of action for misappropriation of confidential information that is not either secret or, at least substantially secret." *Id.* at 98-99 (emphasis in original)(citing *Wissman v. Boucher*, 150 Tex. 326, 240 S.W.2d 278, 280 (1951); *Hallmark Personnel of Texas, Inc. v. Franks*, 562 S.W.2d 933, 936 (Tex. Civ. App.–Houston [1st Dist.] 1978, no writ); *Lamons Metal Gasket Co. v. Traylor*, 361 S.W.2d 211, 213 (Tex. Civ. App.–Houston

[14th Dist.] 1962, writ ref'd n.r.e.)). More recently, the Texas Supreme Court has confirmed that "once a trade secret is made public all ownership is lost." *Computer Associates Intern'l v. Altai*, 918 S.W.2d 453, 457 (Tex. 1994)(citing *Luccous v. J.C. Kinley Co.*, 376 S.W.2d 336, 338 (Tex. 1964)("It is self-evident that the subject matter of a trade secret must be kept secret")).

In the present case, although the definition of "trade secret" tracked the statutory definition, it did not correctly state the law.[1] The charge defined "trade secret" as something that "has value and that the owner has taken measures to prevent from becoming available to persons other than those selected by the owner to have access for limited purposes." The trial court neither instructed the jury that the "trade secret" must be secret or substantially secret, nor did he submit an inquiry for the jury to make such a finding. Further, I disagree with the majority that the court's definition of "trade secret" necessarily included the appellant's requested definition that "an essential element of a trade secret is that it has remained a secret." Because the jury charge lacked this essential instruction, it was not an accurate statement of the law and was defective.

It is undisputed that the appellant timely objected to the charge. Therefore, reversal is required if the error is calculated to injure the rights of the defendant, which means that there must be *some* harm to the accused from the error. *Abdnor*, 871 S.W.2d at 732 (quoting *Almanza v. State*, 686 S.W. 2d 157, 171 (Tex. Crim. App. 1984)). In making this determination, we must examine the error in light of the entire jury charge, the state of the evidence, the argument of counsel and any other relevant information contained in the record of the trial. *Id.* at 733. As a substantial element of his defense, appellant sought to show that the alleged "trade secret" information was routinely replicated in the secondary parts market, the parts alleged to be trade secrets were capable of being, and were in fact, reverse engineered, and the drawings upon which the State relied were widely disseminated to third party buyers, vendors and suppliers. In sum, appellant's entire defense centered around his contention that the alleged "trade secrets" were not secret. As a result, I do not believe, nor does the State contend, that the error is harmless. Accordingly, I would reverse the judgment in Cause Number 653937 and remand for a new trial. In all other respects, I concur with the majority opinion.

---

1. Although appellant makes a compelling argument that the statute's vague and overbroad definition of "trade secret" renders it unconstitutional, I agree with the majority that this issue was not preserved.