Opinion issued September 1, 2015



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00026-CR

————————————

**KERRY BROWN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Case No. 1356491**

---

## MEMORANDUM OPINION

A jury convicted appellant Kerry Brown of murder, and the trial court assessed punishment at 40 years in prison. *See* TEX. PENAL CODE § 19.02. On appeal, Brown challenges the sufficiency of the evidence and allegedly improper statements made by the prosecutor during closing argument.

We affirm.

## Background

On July 25, 2012, complainant Claude Kibbie drove his blue Ford Taurus to the Crofton Place apartment complex where Darrell Lazard lived. Lazard sometimes did mechanic work for neighbors, and Kibbie sought his help. That evening, appellant Kerry Brown was seen in the area with his codefendant at trial, Larry Solomon. Several witnesses saw Brown circling the apartment complex, walking "back and forth," "watching out," and stopping to talk to Solomon after each pass around the buildings. Both men were seen repeatedly peering toward Kibbie. A witness saw the handle of a gun that was tucked into Brown's clothing. At one point, Solomon told Brown, "We got to get him today," and Brown nodded in response. Later Brown spent approximately 30 minutes speaking with Kibbie while they sat in the Taurus.

Around 10:00 p.m., Brown was standing near the passenger side of the Taurus when Kibbie backed up the car and then began to drive it forward. Brown ran alongside, pointing a gun at Kibbie. Solomon also chased the car, and he fired multiple gunshots, one of which struck Kibbie in the head. Kibbie's car crashed into an apartment building, and he later died from the gunshot wound. Solomon and Brown fled the scene.

Police responded, and Sergeant E. Cisneros began an investigation. Based on anonymous tips, interviews with witnesses, and positive identifications from photographic lineups, Sgt. Cisneros identified Solomon and Brown as suspects in the murder.

Solomon and Brown were arrested, charged with murder, and tried together. At trial, several neighbors testified about what they witnessed that night. Brown presented three alibi witnesses, but cross-examination revealed inconsistencies in their testimony. In its closing statement, the State argued that Kibbie and Brown struggled over Brown's gun, which fell apart as evidenced by broken pieces of a gun recovered from Kibbe's vehicle. Solomon's attorney objected that this argument was not supported by the evidence, but Brown made no objection. Because there was eyewitness testimony that Solomon shot Kibbie, the jury charge as to Brown included instructions on the law of parties. The jury found Brown guilty of murder, and he appealed.

**Analysis**

Brown raises two issues on appeal. First he challenges the sufficiency of the evidence to support the jury's verdict. Second he argues that the State's improper jury arguments require reversal.

## I. Sufficiency of the evidence

When evaluating an evidentiary-sufficiency challenge, we consider all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). The standard is the same for both direct and circumstantial evidence cases. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013); *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).

We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. *See Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). We presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). On appeal we may not re-evaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). In reviewing the evidence, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial

evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The Penal Code provides that a person commits murder if he "intentionally or knowingly causes the death of an individual" or "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE § 19.02(b)(1) & (2). A person may be guilty as a party to an offense committed by another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *See id.* § 7.02(a)(2). In determining whether one has acted as a party in the commission of a criminal offense, the court may look to events occurring before, during, and after the commission of the offense. *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006). "Circumstantial evidence alone may be used to prove that a person is a party to an offense." *Id.* at 506. "Participation in an enterprise may be inferred from the circumstances and need not be shown by direct evidence." *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987). Mere presence of the defendant at the scene is not sufficient to support a conviction; however it may suffice to show that the defendant was a participant when combined with other facts. *See Powell*, 194 S.W.3d at 507–08; *Beardsley*, 738 S.W.2d at 685.

Brown argues that there is no evidence that he was a party to the crime. In particular he argues that there was no evidence that he served as a lookout or otherwise cooperated with Solomon, the shooter.

Three witnesses testified about Brown's behavior that evening. A jury could infer from that testimony that Brown aided in the commission of the offense by acting as a lookout. Sheteria Williams was sitting in her car in the parking lot on the evening of the shooting. She saw Solomon and Brown standing together near one of the apartment buildings. Williams did not know the men, and she did not know their names at the time of the shooting, but she later identified both men from photographic lineups and in open court. She testified about a shorter, darker-skinned man, whom she identified as Solomon, and a taller, lighter-skinned man, whom she identified as Brown. Williams testified that she saw Brown walking back and forth around the area, repeatedly circling the buildings. A second witness, Petrina Branch, was also sitting in Williams's car immediately prior to the shooting. She testified that she saw the two men described by Williams and that they were "hiding," "peeking" around the buildings, and "looking around the corner." Finally, Margie Hubbard, a self-proclaimed "nosy" neighbor, had known Solomon for several years. She also recognized Brown. Before the shooting, she saw Solomon and Brown "running back and forth and talking," and looking toward Kibbie's car.

All three witnesses—Williams, Branch, and Hubbard—testified that the behavior of Solomon and Brown was suspicious. Williams found it particularly suspicious because she had seen Brown sit in Kibbie's car with him for approximately 30 minutes earlier that evening. Branch testified that she had a feeling the two men were "up to something." Hubbard, who had been watching from her apartment window, described the men's behavior as "very suspicious." In addition to being suspicious of their actions, Williams was also suspicious because she overheard Solomon tell Brown, "We got to get him today," and she saw Brown nod in response. Similarly, Hubbard testified that she heard "them" saying, "We're going to get him," and "It's going to be on."

The State also introduced evidence that Brown had a gun. Branch testified that she saw the handle of a gun tucked into the clothing of the taller man, who was later identified as Brown. Lakresha Burnett testified that she was retrieving a bag from her car when she saw a man who was standing on the passenger side of the blue Taurus pull out a gun and run alongside the car. Although Burnett did not positively identify Brown, she described the man she saw as taller and having lighter skin than the shooter, which was consistent with the other witnesses' descriptions of Brown.

The evidence showed that Brown repeatedly walked around the buildings, stopping to talk to Solomon and peer at Kibbie. From this evidence, a jury could

infer that he was keeping a lookout of the entire area. The evidence also shows that while watching Kibbie, the two men talked about their plan to "get him." In addition, the evidence showed that Brown had a gun and pointed it at Kibbie as he attempted to leave the parking lot. Finally, the evidence showed that Brown fled the apartment complex. Considering this evidence together, the jury could have concluded that Brown was more than merely present: he aided or participated in the crime. *See Beardsley*, 738 S.W.2d at 684–85.

Brown argues that Williams had "serious credibility issues." However, the determination of the witnesses' credibility and the resolution of inconsistencies in testimony are committed to the jury, and on appeal we may not substitute our judgment for that of the factfinder. *See Williams*, 235 S.W.3d at 750.

Finally, Brown challenges the relevance and sufficiency of evidence that he struggled with Kibbie over a gun. He concedes that the State recovered parts of a broken gun from Kibbie's car, but he argues that none of the parts of the gun were connected to him by DNA or fingerprint evidence and such speculation could not form the basis of his conviction. Although the State may have argued this theory to the jury, it comprised no part of the elements of the offense that the State was required to prove. As we have explained, a rational jury could have concluded that Brown aided or participated in the offense committed by Solomon by keeping watch while repeatedly walking around the apartment complex, agreeing to "get

8

him," and carrying and brandishing a gun. Thus, we hold that, without regard to evidence pertaining to broken gun parts, the evidence was legally sufficient to support the jury's verdict. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Merritt*, 368 S.W.3d at 525.

We overrule Brown's first issue.

## II. Jury argument

In his second issue, Brown argues that the State's improper jury argument warrants reversal. First he argues that the prosecutor argued about facts that were not in evidence, specifically that Kibbie and Brown struggled over a gun that fell apart and that Brown served as a lookout and "set-up" for Kibbie. Next, he argues that the prosecutor abused his position of authority by insinuating that the State had special knowledge of the facts of the case. Finally, he argues that the prosecutor improperly appealed to the jurors' sense of civic duty, which he contends implied that the community was expecting a certain verdict or punishment.

"A defendant's failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal." *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *see* TEX. R. APP. P. 33.1(a). A defendant is generally unable to rely on an objection made by a co-defendant's counsel, without voicing his own objection. *Martinez v. State*, 833 S.W.2d 188, 191 (Tex. App.—Dallas

9

1992, pet. ref'd) (citing *Lerma v. State*, 679 S.W.2d 488, 498 (Tex. Crim. App. 1982)). "A co-defendant may adopt the objection of his fellow defendant, but that adoption must be reflected in the record." *Enlow v. State*, 46 S.W.3d 340, 346 (Tex. App.—Texarkana 2001, pet. ref'd); *see also McGowan v. State*, 938 S.W.2d 732, 736 (Tex. App.—Houston [14th Dist.] 1996), *aff'd sub nom. Weightman v. State*, 975 S.W.2d 621 (Tex. Crim. App. 1998); *Brooks v. State*, No. 01-04-00092-CR, 2005 WL 327192, at \*11 (Tex. App.—Houston [1st Dist.] Feb. 10, 2005, pet. struck) ("A co-defendant who does not voice her own objection at trial has not preserved error.").

Brown made no objection to the prosecutor's arguments that he challenges on appeal. While defense counsel for Solomon objected that the State was relying on facts not in evidence, Brown and his trial counsel were silent during the objections made by Solomon's attorney. We therefore hold that Brown failed to preserve any objection to the State's jury argument. *See Valencia v. State*, 946 S.W.2d 81, 82–83 (Tex. Crim. App. 1997) (holding that court of appeals correctly found waiver when appellant made no objection at trial to State's allegedly improper jury argument); *Cockrell*, 933 S.W.2d at 89 (holding that "a defendant's 'right' not to be subjected to incurable erroneous jury arguments . . . is forfeited by a failure to insist upon it").

We overrule Brown's second issue.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).