COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

EDITH RUTH DELGADILLO,                             )

                                                                              )              
No.  08-01-00455-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                 
65th District Court

THE STATE OF TEXAS,                                     )

                                                                              )            
of El Paso County, Texas

Appellee.                           )

                                                                              )               
(TC# 20000D01739)

                                                                              )

 

                                                                   O
P I N I O N

 








Edith Ruth
Delgadillo was indicted for the offenses of manslaughter (Count I) and failure
to stop and render aid (Count II).  Both
counts alleged that she used or exhibited a deadly weapon, to wit:  a motor vehicle during the commission of and
immediate flight from the offense.  The
jury found Appellant not guilty of manslaughter, but guilty of the
lesser-included offense of criminally negligent homicide as to Count I and
guilty of failure to stop and render aid in Count II as charged in the
indictment.  The jury made an affirmative
deadly weapon findings for the offenses of criminally negligent homicide and
failure to stop and render aid.  Upon her
election, the trial court assessed punishment at five years= imprisonment at the Institutional
Division of the Texas Department of Criminal Justice for each offense, with the
sentences to run concurrently.  Appellant
raises ten issues on appeal, in which she contends the State failed to preserve
exculpatory evidence and engaged in selective investigation, challenges the
sufficiency of the evidence to sustain her convictions for criminally negligent
homicide and failure to stop and render aid, challenges the sufficiency of the
evidence to sustain the deadly weapon finding as to the failure to stop and
render aid offense, asserts that a deadly weapon finding is not applicable to a
conviction for criminally negligent homicide or alternatively is
constitutionally infirm, and contends the trial court committed jury charge
errors.  We affirm in part, reverse in
part, and reform the trial court=s
judgment to delete the deadly weapon finding for the offense of failure to stop
and render aid.

In the final hour
of September 18, 1999, Robert Madrid, an off-duty police officer, was driving
his motorcycle south on Railroad Drive near the intersection of Deer Road when
he was struck from behind by an 1988 Delta Oldsmobile driven by Appellant.  The collision threw Mr. Madrid from his
motorcycle and he died as a result of injuries sustained.  At the same time, James Newman and his wife
Maria were traveling north on Railroad, approaching the Deer Road intersection.  Mr. Newman recalled that traffic was heavier
than usual that night along that unlit area of Railroad.  At the Deer intersection, Mr. Newman stopped
and waited behind another car to turn left onto Deer.  Mr. Newman saw three vehicles southbound on
Railroad while he was waiting to turn left. 
After the first vehicle passed, the car in front of him made the left
turn.  Mr. Newman waited as a
motorcycle and a car approached the intersection.  He observed that both vehicles had their
headlights on.  Mr. Newman did not see
the collision, but heard tires squealing and saw the motorcycle hit a curb and
start flipping through the air.  As it
was flipping, Mr. Newman observed that the motorcycle=s
taillight was on before the motorcycle smashed to the ground near his car.  Mr. Newman also observed the other vehicle
jump a curb and continue to travel off the road into the desert.








Gustavo Ogaz was
traveling northbound on Railroad on his way to work on the night of the
accident.  Mr. Ogaz also recalled that
traffic was heavier than usual for that time of night.  As he was approaching the Deer intersection,
Mr. Ogaz saw a car pass by him on his right side traveling off the road in the
desert.  The hood of the vehicle was up
and it was moving between twenty to thirty miles per hour.  Seconds later, Mr. Ogaz reached the Deer
intersection and saw cars pulling over. 
Then he saw Robert Madrid, laying in the middle of the road in his lane
and he pulled up and parked his car in front of the body to prevent someone from
running over it.  Along with other
witnesses, Mr. Ogaz checked for a pulse on Mr. Madrid and contacted emergency
assistance.

Security guard
Rick Ches, was working at the Furr=s
Supermarkets warehouse distribution center at Pinnacle and Railroad on the
night of the accident.  From the main
gate on Railroad, Mr. Ches watched a female, whom he later identified as
Appellant, running down Railroad towards Hondo Pass and looking over her
shoulder as if someone was chasing her. 
He saw her stop and stand for about two minutes before she began walking
in the same direction.  Mr. Ches
then saw a truck stop alongside her and pick her up.








Several police
officers were dispatched to the accident scene on Railroad.  Officer Augustine Martinez was the first
police unit to arrive.  Officer Martinez
summoned a supervisor and special traffic investigators to the scene.  Witnesses directed the officer to the vehicle
involved in the accident, which was approximately 400 feet away from the actual
impact.  To his knowledge, Officer Jesse
Eckard with the Special Traffic Investigations unit (ASTI@) was the officer that videotaped the
motorcycle at the scene.  Officer
Martinez recalled that the motorcycle=s
engine was off, but one of its headlights was on when he approached it at the
accident scene.

Officer Rick
Jordan collected evidence from and took photographs of Appellant=s vehicle.  An indentation on the hood of the vehicle
matched the motorcycle backrest.  The
vehicle=s
radiator was broken and leaking water and parts of the motorcycle=s turn signal, engine, and battery
terminal were embedded in the radiator. 
Officer Jordan also recovered pieces of the motorcycle=s turn signal from the vehicle=s front left headlight and a fragment
of the motorcycle muffler pipe from the left front chassis of the vehicle.  On cross-examination,  Officer Jordan testified that he knew the
victim and was his friend.  Officer
Jordan cried for some minutes at the scene, but then continued to do his
job.  The crime scene was divided up with
STI handling the motorcycle and the victim, while Officer Jordan was
responsible for evidence collection from Appellant=s
vehicle.

STI Officer David
Aguirre was one of the officers dispatched to the scene, and at trial, he
testified as an expert witness in accident reconstruction.  Based on physical evidence, Officer Aguirre
determined that Appellant=s
vehicle collided with the motorcycle with substantial force, causing the
motorcycle to tumble and go airborne at times. 
When impact occurred, the motorcycle pierced the front end of the
vehicle before separating.  Officer
Aguirre observed no tire marks on the road to indicate panic braking.  Based on his calculations for the speed of
the motorcycle at the moment it started to tumble, Officer Aguirre believed
Appellant=s vehicle
was traveling at least sixty-three miles per hour when the impact
occurred.  Officer Aguirre testified that
the speed limit in that area was fifty miles per hour.








At trial,
Appellant called Curtis Flynn to testify as an expert in accident
reconstruction.  In Mr. Flynn=s opinion, Officer Aguirre=s calculations failed to account for
particular road conditions and did not include energy conservation of momentum
calculations.  Mr. Flynn determined that
the motorcycle was traveling between ten to fifteen miles per hour at the time
of impact and forty-eight miles per hour after impact.  From his review of the evidence, Mr. Flynn
saw no indication that the motorcycle=s
headlights were on at the time of impact. 
Even though videotape of the motorcycle showed that the taillight
assembly on the motorcycle was smashed, Mr. Flynn believed that if it had been
preserved, it would have been possible to conduct an investigation of that
assembly to determine whether it was functioning at the time of impact.

Exculpatory
Evidence and Selective Investigation

In Issue One,
Appellant contends the State failed to preserve exculpatory evidence, the
taillight and rear light assembly of the motorcycle, which prevented her from
determining whether the taillight was on at time of impact.  Appellant also argues that she was denied due
process by the police=s
improper and selective investigation in this case because the entire focus of
the investigation was on the vehicle, not the motorcycle.

The State=s duty to preserve evidence is limited
to the evidence that possesses an exculpatory value that was apparent before
the evidence was destroyed.  California
v. Trombetta, 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413
(1984); Lee v. State, 893 S.W.2d 80, 86 (Tex.App.‑‑El Paso
1994, no pet.).  To show a denial of due
process has occurred when evidence was lost, a defendant must show the evidence
was:  (1) material; (2) favorable to the
defense; and (3) destroyed in bad faith by the State.  See Arizona v. Youngblood, 488 U.S.
51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988); Trombetta, 467 U.S.
at 488‑89, 104 S.Ct. at 

2533-34.  A showing that evidence might have been
favorable does not meet the materiality standard.  Lee, 893 S.W.2d at 87.








In this case, police
officers impounded both Appellant=s
vehicle and the motorcycle for further investigation.  However, Officer Eckard of the STI unit
authorized release of the motorcycle on September 22, 1999 and it was later
released on October 27, 1999.  At trial,
Officer Aguirre testified that he did not know where the motorcycle=s taillight assembly was, though he
understood this evidence was a key factor in the accident.  Officer Aguirre explained that at the time of
the investigation, he was preparing to retire and was relinquishing his
responsibilities to other STI officers. 
Officer Aguirre did not inspect the motorcycle and assumed that his
partner Officer Eckard would take care of that responsibility.  Although Officer Aguirre did not re-examine
the motorcycle, based on his accident reconstruction, he believed the rear end
of the motorcycle took the full force of the impact and the taillight assembly
literally disintegrated, leaving no evidence to establish whether or not the
light was on or not.  Officer Aguirre,
however, conceded on cross-examination that DPS has a lab for possible
microscopic analysis of filament evidence. 
Though the State lacked physical evidence that the motorcycle taillight
was on at the time of the accident, witness James Newman testified that he
observed the headlight and taillight were on when the motorcycle was flipping
through the air.  His wife, Maria Newman,
recalled the motorcycle headlight was on, but could not remember if the
taillight was on.








Appellant argues
on appeal that Officer Aguirre=s
uncontradicted testimony as to the exculpatory value of the motorcycle and its
taillight and rear light assembly and her inability to obtain comparable
evidence concerning whether the taillight was on at the time of impact
establishes the materiality of the evidence the State failed to preserve.  Further, Appellant argues that there is
evidence of bad faith on the part of the police, pointing to testimony that the
officers knew the victim was a fellow police officer and the authorized release
of the motorcycle three days after the accident.

A showing that
evidence might have been favorable does not meet the materiality standard.  Lee, 893 S.W.2d at 87.  Appellant has failed to show that possible
testing of filament evidence would have been favorable to the defense,
particularly given Mr. Newman=s
testimony that the taillight was on at the time of impact.  Moreover, Appellant has failed to establish
bad faith on the part of the State in its failure to preserve the motorcycle
taillight evidence.  There is no evidence
in the record to explain Officer Eckard=s
release of the motorcycle.  Officer
Aguirre testified that at that time, he was relinquishing his responsibilities
to other officers and he assumed his partner was taking care of this evidence.  Officer Martinez, who summoned the STI
officers, testified that this investigation was no different from any other
investigation due to the identity of the victim.  Officer Martinez also denied there was any
kind of vendetta against Appellant because the accident involved the fatality
of a fellow officer.  While police
officers were clearly negligent in their attempt to preserve motorcycle
evidence in this case, there is no indication that they did so in bad faith.








Within Issue One,
Appellant also asserts that the State=s
investigation was selective, having a Ablind
focus@ on the
vehicle and not the motorcycle, which deprived her of due process of law.  Although the police officers= investigation was flawed in failing to
reinspect the motorcycle, the totality of the circumstances do not show the
investigation to be so seriously improper as to deprive Appellant of her right
to due process.  See Ex parte Brandley,781
S.W.2d 886, 887 (Tex.Crim.App. 1989), cert. denied, 498 U.S. 817, 111
S.Ct. 61, 112 L.Ed.2d 35 (1990) (under totality of circumstances officers= investigation was so seriously flawed
it resulted in violation of due process); Gilbert v. State, 840 S.W.2d
138, 142 (Tex.App.--Houston [1st Dist.] 1992, no pet.)(failure to test possible
exculpatory evidence did not constitute Ex parte Brandley violation
under totality of circumstances).  Issue
One is overruled.

Criminally
Negligent Homicide

In Issues Two and
Three, Appellant challenges the legal and factual sufficiency of the evidence
to support her conviction for criminally negligent homicide.  Specifically, Appellant asserts that the
evidence was insufficient to prove she ought to have been aware of a
substantial and unjustifiable risk of injury or death to Mr. Madrid or that her
failure to perceive this risk constituted a gross deviation from the standard
of care an ordinary person would exercise under all the circumstances as viewed
from her standpoint.

In its brief, the
State contends Appellant is estopped from complaining on appeal of the
sufficiency of the evidence supporting her conviction for the lesser-included
offense which she requested in the jury charge, citing to State v. Lee,
818 S.W.2d 778, 781 (Tex.Crim.App. 1991)(plurality opinion), overruled on
other grounds, Moore v. State, 969 S.W.2d 4 (Tex.Crim.App.
1998).  The Texas Court of Criminal
Appeals has recently granted petitionary review of this Court=s opinion in Bustillos v. State,
2003 WL 1386948, No. 08-01-00467-CR (Tex.App.‑-El Paso Mar. 20, 2003,
pet. granted)(not designated for publication), on the issue of whether an
appellant waives sufficiency review for a requested lesser-included
offense.  In the interests of justice, we
will examine the sufficiency of the evidence to sustain Appellant=s conviction for criminally negligent
homicide.








In reviewing the
legal sufficiency of the evidence, we must view the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S.Ct. 2781, 2788-89, 61 L.Ed. 560 (1979); Lacour v. State, 8
S.W.3d 670, 671 (Tex.Crim.App. 2000).  We
measure the legal sufficiency of the evidence by the elements of the offense as
defined by a hypothetically correct jury charge for the case.  Malik v. State, 953 S.W.2d 234, 240
(Tex.Crim.App. 1997).  This hypothetical
charge would set out the law, be authorized by the indictment, not
unnecessarily increase the State=s
burden of proof or unnecessarily restrict the State=s
theories of liability, and adequately describe the particular offense for which
the defendant was tried.  Id.  We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this was the
function of the trier of fact.  See
Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v.
State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991).  Rather, our duty is to determine whether if
both the explicit and implicit findings of the trier of fact are rational by
viewing all the evidence admitted at trial in the light most favorable to the
verdict.  See Adelman, 828 S.W.2d
at 421-22.  In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict.  Matson, 819 S.W.2d at 843.








In reviewing the
factual sufficiency of the evidence, we view all the evidence in a neutral
light, both for and against the verdict, to determine whether it demonstrates
that the proof of guilt is so obviously weak as to undermine our confidence in
the jury=s
determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof.  Johnson
v. State, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000); Clewis v. State, 922
S.W.2d 126, 134 (Tex.Crim.App. 1996).  We
review the evidence supporting a fact in dispute and compare it to evidence
tending to disprove that fact.  Johnson,
23 S.W.3d at 6-7; Jones v. State, 944 S.W.2d 642, 647 (Tex.Crim.App.
1996), cert. denied, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54
(1997).  Although we are authorized to
disagree with the jury=s
determination, we must give due deference to the jury=s
assessment of the weight and credibility of the evidence to avoid substituting
our judgment for that of the fact finder. 
Johnson, 23 S.W.3d at 7; Jones, 944 S.W.2d. at 648.  We will set aside a verdict only where the
evidence supporting guilt is so obviously weak or the contrary evidence so
overwhelmingly outweighs the support evidence as to render the conviction
clearly wrong and manifestly unjust.  Ortiz
v. State, 93 S.W.3d 79, 87 (Tex.Crim.App. 2002), cert. denied, 123
S.Ct. 1901, 155 L.Ed.2d 824 (2003).

In this case,
under a hypothetically correct jury charge, the State=s
theory of criminal negligence was based on Appellant=s
alleged failure to control the speed of her vehicle.  See Malik, 953 S.W.2d at 239-40.  A person commits the offense of criminally
negligent homicide if that person causes the death of an individual by criminal
negligence.  See Tex.Pen.Code Ann. ' 19.05(a)(Vernon 2003).  A person acts with criminal negligence, with respect
to circumstances surrounding her conduct or the result of her conduct, when she
ought to be aware of substantial and unjustifiable risk that the circumstances
exist or the result will occur, and the risk is of such a nature and degree
that the failure to perceive it constitutes a gross deviation from the standard
of care that an ordinary person would exercise under all the circumstances as
viewed from the actor=s
standpoint.  See Tex.Pen.Code Ann. ' 6.03(d)(Vernon 2003).








The evidence at
trial showed that on the night of the accident, traffic on Railroad was usually
heavy and the Railroad and Deer intersection was poorly lit.  Witnesses observed that Appellant=s vehicle and the motorcycle both had
their headlights on as they approached the intersection.  According to Officer Aguirre=s accident reconstruction, Appellant
was driving over sixty-three miles per hour, exceeding the posted speed limit
for that area.  Officer Aguirre observed
no skid marks at the accident scene, suggesting that Appellant did not attempt
any panic braking before the impact. 
Appellant=s failure
to slow down when traveling behind the victim=s
motorcycle created both a substantial and unjustifiable risk, which she should
have been aware of given the apparent traffic conditions on Railroad that
night.  Moreover, Appellant=s failure to perceive this risk
constituted a gross deviation from the standard of care that an ordinary person
would exercise under all the circumstances as viewed from her standpoint.  We conclude the evidence was legally
sufficient to sustain her conviction for criminally negligent homicide.  After reviewing all the evidence in a neutral
light, we find that the supporting evidence is not so obviously weak nor
outweighed by contrary evidence as to render the conviction clearly wrong and
manifestly unjust.  See Ortiz, 93
S.W.3d at 87.  Issues Two and Three are
overruled.  

Failure
to Stop and Render Aid

In Issues Five and
Six, Appellant challenges the legal and factual sufficiency of the evidence to
sustain her conviction for failure to stop and render aid.  Appellant argues that the evidence was
insufficient to show she knew an accident had occurred that resulted in death.  Appellant asserts that since the indictment
states she operated a vehicle Awhich
became involved in an accident resulting in the death of Robert Madrid@ and did Athereafter,
knowing that said accident had occurred, intentionally and knowingly fail to
stop and comply with her duty to give information and render aid,@ the State was required to prove beyond
a reasonable doubt that she knew the accident resulted in a death.








Section 550.021 of
the Texas Transportation Code requires the operator of a vehicle involved in an
accident resulting in injury or death to stop at the scene and remain there to
complain with certain reporting requirements. 
See Tex.Trans.Code Ann.
' 550.021 (Vernon 1999).  The elements of the offense of failure to
stop and render aid are:  (1) an operator
of a motor vehicle; (2) intentionally and knowingly; (3) involved in an
accident; (4) resulting in injury or death of any person; (5) fails to stop and
render reasonable assistance.  See St.
Clair v. State, 26 S.W.3d 89, 98 (Tex.App.--Waco 2000, pet. ref=d); Goar v. State, 68 S.W.3d
269, 272 (Tex.App.--Houston [14th Dist.] 2002, pet. ref=d).  The culpable mental state for this offense is
that the accused had knowledge of the circumstances surrounding her conduct,
meaning the defendant had knowledge that an accident had occurred.  See Goss v. State, 582 S.W.2d 782, 785
(Tex.Crim.App. 1979) (establishing culpable mental state for the offense); Goar,
68 S.W.3d at 272.  Therefore, under a
hypothetically correct jury charge, the State was required to prove Appellant
had knowledge that an accident occurred, the accident resulted in injury or
death of a person, and Appellant failed to stop and render reasonable
assistance.  

In this case, the
evidence showed that upon impact with the motorcycle, Appellant=s vehicle drove off the road into the
desert and sustained extensive front end damage.  The vehicle=s
radiator broke, the hood flew up, the windshield was smashed, and the tires
deflated.  Parts of the motorcycle became
embedded into the vehicle as a result of the collision.  Witnesses observed the motorcycle tumbling
and flipping through the air.  Appellant
was seen fleeing the Railroad Avenue area by foot.  Given the extensive damage to her vehicle and
the substantial impact of the collision, a jury could reasonably conclude that
Appellant had knowledge of the circumstances surrounding her conduct, that is,
she knew she had been involved in an accident. 
After reviewing the evidence under the applicable sufficiency review
standards, we conclude the evidence is both legally and factually sufficient to
sustain her conviction for failure to stop and render aid.  Issues Five and Six are overruled.








Deadly
Weapon Finding for Failure to Stop and Render Aid Conviction

In her seventh and
eighth issues, Appellant challenges the legal and factual sufficiency of the
evidence to support the jury=s
affirmative finding of use of a deadly weapon in the commission of the offense
of failure to stop and render aid. 
Specifically, Appellant asserts the evidence shows she did not use her
vehicle to facilitate her failure to stop and render aid because it was
disabled upon impact and in addition, no one was placed in danger of serious
bodily injury or death by the vehicle in the commission of the alleged
offense.  We agree that the evidence is
legally insufficient to show Appellant=s
vehicle was used or exhibited as a deadly weapon during the failure to stop and
render aid offense.








A deadly weapon is
defined as anything that in the manner of its use or intended use is capable of
causing death or serious bodily injury.  See
Tex.Pen.Code Ann. ' 1.07(a)(17)(B) (Vernon Supp.
2004).  An automobile can be a deadly
weapon if it is driven in a manner that endangers lives.  Cates v. State, 102 S.W.3d 735, 738
(Tex.Crim.App. 2003).  Evidence at trial
must demonstrate that the deadly weapon was used or exhibited Aduring the transaction from which@ the felony conviction is
obtained.  Id.  The relevant time period for determining
whether Appellant=s vehicle
was used as a deadly weapon during the offense of failure to stop and render
aid is the time period after the collision with the motorcycle.  See id.  Witnesses at the scene observed Appellant=s vehicle driving off the road in a
desert area, traveling twenty to thirty miles per hour with the hood up.  There was no evidence that anyone was
actually endangered by Appellant=s
vehicle as it drove off the road into the desert.  As a result of extensive damage, Appellant=s vehicle was rendered inoperable and
abandoned several hundred feet away from the scene.  Appellant did not use her vehicle to flee the
scene.  Standing alone, evidence of how a
vehicle was driven before the offense of failure to stop and render aid is not
sufficient to sustain a deadly weapon finding. 
Cates, 102 S.W.3d at 739. 
Because there is no evidence that Appellant=s
vehicle was driven in a manner that endangered lives during the offense of
failure to stop and render aid, we conclude the deadly weapon finding is not
supported by legally sufficient evidence. 
Issues Seven and Eight are sustained.

Deadly
Weapon Finding for Criminally Negligent Homicide Conviction

In Issue Four,
Appellant argues that the deadly weapon finding as to the offense of criminally
negligent homicide must be reversed and deleted from the judgment of that
conviction.  Specifically, Appellant
asserts that the Code of Criminal Procedure Article 42.12, ' 3g(a)(2) does not apply to a
criminally negligent homicide conviction because the culpable mental state for
criminal negligence cannot support a deadly weapon finding.  Alternatively, Appellant contends that a
deadly weapon finding to enhance punishment for the offense of criminally
negligent homicide cannot survive constitutional scrutiny.

Under the Texas
Penal Code, the offense of criminally negligent homicide is a state jail
felony.  See Tex.Pen.Code Ann. ' 19.05(b).  Section 12.35(c)(1) provides that an actor
adjudged guilty of a state jail felony will be punished for a third degree
felony if the actor used or exhibited a deadly weapon during the commission of
the offense or during immediate flight following the commission of the
offense.  See Tex.Pen.Code Ann. ' 12.35(c)(1)(Vernon 2003).  Under Article 42.12, '
3g(a)(2) of the Texas Code of Criminal Procedure, judge ordered community
supervision does not apply to a defendant when it is shown that the defendant
used or exhibited a deadly weapon during the commission of the offense or
during the immediate flight therefrom.  See
Tex.Code Crim.Proc.Ann. art.
42.12, '
3g(a)(2)(Vernon Supp. 2004).








Theoretically, all
felonies are susceptible to an affirmative finding of the use or exhibition of
a deadly weapon.  Patterson v. State,
769 S.W.2d 938, 940 (Tex.Crim.App. 1989). 
Under the Penal Code, a deadly weapon is anything that in the manner of
its use or intended use is capable of causing death or serious bodily injury.  See Tex.Pen.Code
Ann. '
1.07(a)(17)(B).  Anything, including a
motor vehicle, which is actually used to cause the death of a human being is a
deadly weapon because a thing which actually causes death is, by definition, Acapable of causing death.@ 
Tyra v. State, 897 S.W.2d 796, 798 (Tex.Crim.App. 1995).  Appellant has not challenged the sufficiency
of the evidence supporting the deadly weapon finding for the criminally
negligent homicide conviction as a separate issue on appeal nor has she
presented any argument to that effect. 
In this case, Appellant=s
vehicle collided with Mr. Madrid=s
motorcycle and actually caused Mr. Madrid=s
death, therefore the vehicle was a deadly weapon.








Appellant argues
that in Tyra v. State, the Texas Court of Criminal Appeals left unclear
whether a deadly weapon finding would be permissible upon a conviction of a
felony with a less culpable mental state than involuntary manslaughter.  We disagree with this assertion.  In Tyra, appellant was convicted of
involuntary manslaughter under former Penal Code Section 19.05(a)(2) for
accidentally or mistakenly causing the death of an individual by reason of
operating a motor vehicle while intoxicated and the jury made an affirmative
deadly weapon finding, which the judge noted in the judgment pursuant to Tex.Code Crim.Proc.Ann. art. 42.12, ' 3g(a)(2).  Tyra, 897 S.W.2d at 797.  The Court clarified that in Patterson v.
State, 769 S.W.2d 938 (Tex.Crim.App. 1989), it determined that Aused or exhibited a deadly weapon@ includes any employment of a
deadly weapon, even its simple possession, if such possession facilitates the
associated felony.  Tyra, 897
S.W.2d at 797.  The Tyra Court
explained that while Amere
possession@ of a
deadly weapon without putting it to any use or purpose whatsoever does not
constitute Ause@ of that weapon, possession of a weapon
to facilitate a felony may constitute such a use, not just in cases where a
deadly weapon was used to commit an Aassociated
offense.@  See Tyra, 897 S.W.2d at 798.

In support of her
argument that a felony with a lesser culpable mental state than involuntary
manslaughter will not support a deadly weapon finding, Appellant points to the
following language in Tyra:

[Article 42.12, ' 3g(a)(2)] may not be a model of
specificity.  But we cannot say that it
is too vague for rational enforcement either. 
The fact is that the Legislature might not actually have contemplated
application of the statute to a variety of circumstances, including those
presented here.  But the statute on its
face does apply to these facts.  As the
Court emphasized in Patterson, >A[u]se,@
as a verb, may mean a number of things.=  769 S.W.2d at 940.  Whether it means mere possession, the
question actually presented in Narron and Petty may have been a
close question.  Whether it means driving
an automobile recklessly enough to endanger the lives of other people is
not.  If, therefore, entry of an
affirmative finding that appellant used a deadly weapon to end the life of
another motorist seems unwise or unfair in this case, consideration should be
given to amending the statute.  But it is
a poor excuse for setting aside the rational judgment of a jury, properly
instructed in the law as it actually is, and as it actually was at the time of
appellant=s trial.

 

Tyra, 897 S.W.2d at 799.








The Tyra
opinion provides no support for Appellant=s
argument.  The Tyra Court was
clearly limiting its discussion to Aclose
question@ cases
involving Ause@ of a deadly weapon and possession of
that purported deadly weapon as an element of the felony offense.  Nothing in the Court=s
opinion indicates that this determination turns on the culpable mental state of
the underlying offense.  Appellant=s use of her vehicle facilitated the
associated felony of criminally negligent homicide and actually caused death,
therefore the jury=s
affirmative deadly weapon finding was permissible.

Alternatively,
Appellant argues that the court=s
interpretation of Adeadly
weapon@

 under Texas Penal Code '
1.07(a)(17)(B) and Aused or
exhibited@ under
Texas Code of Criminal Procedure Article 42.12, '
3g, as applied to her conduct in this case, is unconstitutionally vague and
overbroad.  The State asserts that
Appellant has failed to preserve this complaint for review because she failed
to make her Aas
applied@ constitutional
challenge in the trial court.  See
Tex.R.App.P. 33.1.  We agree.

A challenge to the
constitutionality of a statute as applied to an accused must be asserted in the
trial court or it is waived.  See
Curry v. State, 910 S.W.2d 490, 496 n.2 (Tex.Crim.App. 1995); Garcia v.
State, 887 S.W.2d 846, 861 (Tex.Crim.App. 1994); McGowan v. State,
938 S.W.2d 732, 741-42 (Tex.App.--Houston [14th Dist.] 1997)(Opin. on reh=g), aff=d. sub nom. Weightman v. State, 975
S.W.2d 621 (Tex.Crim.App. 1998).  Facial
challenges, however, contest a court=s
jurisdictional power to enforce the statute under any circumstances and may
therefore be raised for the first time on appeal.  Rodriguez v. State, 71 S.W.3d 800, 802
(Tex.App.--Texarkana 2002, no pet.); McGowan, 938 S.W.2d at 741-42; Rabb
v. State, 730 S.W.2d 751, 752 (Tex.Crim.App. 1987).  Here, Appellant failed to object in the trial
court to the constitutionality of the statutes complained-of on appeal.  Therefore, she has waived her right to
challenge the statutes as applied in her case on appeal.  Issue Four is overruled.  

Jury
Charge Errors

Reasonable
Doubt Instruction for Deadly Weapon Finding








In Issue Nine,
Appellant complains that the trial court erred in failing to include a Abeyond reasonable doubt@ instruction as to the deadly weapon
finding conditional questions in its charge to the jury.[1]  An affirmative finding of a deadly weapon
requires the State to prove beyond a reasonable doubt that appellant used a
deadly weapon.  Hill v. State, 913
S.W.2d 581, 583 (Tex.Crim.App. 1996). 
The State concedes that it was required to proved the deadly weapon
issue beyond a reasonable doubt and that the jury should have been so instructed.  However, the State argues that Appellant has
failed to show that this error requires reversal.

Appellant did not
specifically object to the omission of a beyond reasonable doubt instruction,
therefore she must show she suffered egregious harm as a result of this
error.  Almanza v. State, 686
S.W.2d 157, 171 (Tex.Crim.App. 1985)(Opin. on reh=g);
Hill, 913 S.W.2d at 585.  The
actual degree of harm must be assayed in light of the evidence, including the
contested issues and weight of probative evidence, the argument of counsel, and
other relevant information revealed by the record of the trial as a whole.  Almanza, 686 S.W.2d at 171; Hill,
913 S.W.2d at 585.








In this case, the
jury was instructed that the State=s
burden of proof was beyond a reasonable doubt as to the elements of the
criminally negligent homicide offense. 
The evidence showed that Appellant drove her vehicle into the rear of
Mr. Madrid=s
motorcycle, colliding with the motorcycle in a manner that actually caused Mr.
Madrid=s
death.  While the jury was not
specifically instructed on the State=s
burden with respect to the deadly weapon issue, it was properly instructed on
the State=s burden
of proof of beyond a reasonable doubt in the guilt-innocence phase of the trial
and no other burden of proof was provided to the jury.  Appellant has failed to show egregious harm
resulted from the complained-of charge error. 
Issue Nine is overruled.

Definition
of Criminally Negligent Homicide Not Authorized by Statute

In Issue Ten,
Appellant asserts the trial court erred by failing to provide a culpable mental
state in the application paragraph in the jury charge on the lesser-included
offense of criminally negligent homicide. 
Appellant requested the instruction on criminally negligent homicide and
it was submitted to the jury over the State=s
objection.  Appellant filed a written
proposed charge for the offense with the trial court.  Both the abstract definitions and application
paragraph in the instructions on criminally negligent homicide track the exact
language Appellant submitted to the trial court.[2]  The State contends that any error in the
complained-of charge was invited by Appellant. 
We agree.  The trial court
submitted the criminally negligent homicide charge at Appellant=s request, therefore she invited any
error and cannot now be heard to complain about that the charge on appeal.  See Turner v. State, 87 S.W.3d 111,
116-17 (Tex.Crim.App. 2002); Prystash v. State, 3 S.W.3d 522, 529-31
(Tex.Crim.App. 1999), cert. denied, 529 U.S. 1102, 120 S.Ct. 1840, 146
L.Ed.2d 782 (2000)(doctrine of invited error is properly thought of as
estoppel, by which a party is not permitted to take advantage of his own
wrong).  Issue Ten is overruled.








We reverse only
that part of the trial court=s
judgment which provides an affirmative deadly weapon finding for the offense of
failure to stop and render aid and reform the trial court=s judgment to delete it.  We affirm the trial court=s judgment as reformed.

 

 

 

                                                                                 


June
17, 2004                                                  DAVID
WELLINGTON CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.

 

(Do Not Publish)











[1]
We will only address the omission of a beyond reasonable doubt instruction in
the deadly weapon finding conditional question with respect to the criminally
negligent homicide offense, not the failure to stop and render aid offense, as
we decided the deadly weapon finding for the failure to stop and render aid
conviction was legally insufficient in our disposition of Appellant=s Issue Seven.





[2]
The application paragraph in the court=s
charge stated: 

 

Therefore, if you find from the evidence
beyond a reasonable doubt that on or about the 19th day of September, 1999 in
El Paso County, Texas, the defendant RUTH DELGADILLO, by driving her motor
vehicle into and causing it to collide with a motor vehicle driven by ROBERT
MADRID, did then and there cause the death of an individual, namely ROBERT
MADRID, then you will find the defendant guilty of Criminally Negligent
Homicide.