PD-1287-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/29/2015 4:10:31 PM
Accepted 11/2/2015 11:30:52 AM
ABEL ACOSTA
CLERK

**IN THE COURT OF CRIMINAL APPEALS OF TEXAS**

_____

**No. PD-1287-15**

_____

**KERRY BROWN, PETITIONER**

**V.**

**THE STATE OF TEXAS, RESPONDENT**

_____

**On appeal from the First District Court of Appeals,
Cause No. 01-14-00026-CR,
and the 338th District Court, Harris County, Texas,
Trial Court Case No. 13-56491,
Honorable Brock Thomas, Presiding**

_____

**PETITION FOR DISCRETIONARY REVIEW**

FILED IN
COURT OF CRIMINAL APPEALS

November 2, 2015

ABEL ACOSTA, CLERK

**Submitted by:
Robert Sirianni, Jr., Esq.
Brownstone, P.A.
201 N. New York Ave.,
Winter Park, FL  32789
Phone:  407-388-1900
Fax:  407- 622-1511
RobertSirianni@BrownstoneLaw.com
SBOT No. 24086378
Attorney for Appellant**

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF JUDGES, PARTIES, AND COUNSEL

**Trial court judge:**
Hon. Brock Thomas

**Kerry Brown, Petitioner**

Trial counsel:
Lott J. Brooks, III, Esq.
1314 Texas, Suite 710
Houston, TX 77002
SBOT No. 03070750

Appellate counsel:
Robert L. Sirianni, Jr., Esq.
Brownstone, P.A.
201 N. New York Avenue
Winter Park, FL 32789
Phone: 407-388-1900
Fax: 407-622-1511
RobertSirianni@BrownstoneLaw.com
SBOT No. 24086378

**State of Texas, Respondent**

Trial counsel:
Aaron Burdette, Esq.
David Overhuls, Esq.
John Jordan, Esq.
Harris County District Attorney's Office
1201 Franklin, Suite 600
Houston, TX 77002

Appellate counsel:
Devon Anderson, Esq.
Kevin Keating, Esq.
Harris County District Attorney's Office
1201 Franklin, Suite 600
Houston, TX 77002

# TABLE OF CONTENTS

IDENTITY OF JUDGES, PARTIES, AND COUNSEL.....................................ii

INDEX OF AUTHORITIES ................................................................ iv

STATEMENT REGARDING ORAL ARGUMENT...........................................1

STATEMENT OF THE CASE .............................................................1

STATEMENT OF PROCEDURAL HISTORY ....................................................1

GROUNDS FOR REVIEW ................................................................2

REASONS FOR GRANTING REVIEW ...............................................2

STATEMENT OF SIGNIFICANT FACTS ........................................................3

ARGUMENT .......................................................................................6

I.    THE COURT OF APPEALS ERRED IN FINDING THAT THE EVIDENCE WAS LEGALLY SUFFICIENT TO SUPPORT THE PETITIONER'S CONVICTION. GRANTING THIS PETITION WILL PROVIDE THIS COURT WITH AN ADDITIONAL FACTUAL TEMPLATE FOR REEXAMINING THE NEED FOR A FACTUAL SUFFICIENCY ANALYSIS AND FOR RECONSIDERING *BROOKS V. STATE*, 323 S.W.3D 893 (TEX.CRIM.APP. 2010), WHICH IT ALREADY AGREED TO REVIEW IN *WALKER V. STATE*, NO. PD-1429-14 (TEX.CRIM.APP. PET. GRANTED OCTOBER 15, 2015).....................................6

PRAYER ...........................................................................................14

CERTIFICATE OF SERVICE...............................................................14

CERTIFICATE OF COMPLIANCE WITH TEX.R.APP.P. 9.4.....................15

APPENDIX CONTAINING THE COURT OF APPEALS' OPINION

# INDEX OF AUTHORITIES

## Cases

*Berry v. State*
233 S.W.3d 847 (Tex.Crim.App. 2007) .......................................... 7, 13

*Brooks v. State*
323 S.W.3d 893 (Tex.Crim.App. 2010) ................................. 2, 6, 9, 13

*Brown v. State*
No. 01-14-00026-CR (Tex.App. – Houston [1st Dist. 2015)................ 1

*Hooper v. State*
214 S.W.3d 9 (Tex.Crim.App. 2007) .................................... 6, 9, 12, 13

*Isassi v. State*
330 S.W.3d 633 (Tex.Crim.App. 2010) .............................................. 7

*Jackson v. Virginia*
443 U.S. 307, 99 S.Ct. 2781 (1979) ............................................ 2, 6, 9

*Proctor v. State*
967 S.W.2d 840 (Tex.Crim.App. 1998) ......................................... 2, 13

*Reedy v. State*
214 S.W.3d 567 (Tex.App. – Austin 2006, pet. ref'd) ......................... 6

*Walker v. State*
No. PD-1429-14 (Tex.Crim.App. pet. granted October 15, 2015) . 2, 6, 7, 12

## Statutes

Tex. Penal Code §7.02(a)(2) ............................................................. 7

## Rules

Tex.R.App.P. 66.3(c) .................................................................. 2, 13
Tex.R.App.P. 9.4.............................................................................. 14

**TO THE HONORABLE JUDGES OF SAID COURT:**

Kerry Brown, Petitioner and Defendant in the trial court, respectfully submits this his Petition for Discretionary Review complaining of the ruling and opinion by the Court of Appeals for the First Judicial District, and would show this Honorable Court as follows:

## STATEMENT REGARDING ORAL ARGUMENT

In the event that this Court grants this Petition, the Petitioner requests the Court to grant oral argument so that all matters may be clarified and any questions presented by the briefs of the parties may be addressed in a proper manner.

## STATEMENT OF THE CASE

The Petitioner was indicted on November 2, 2012, for the murder of Claude Kibbie on or about July 25, 2012. CR 13.  A jury trial began on December 13, 2013. 1 RR 1.  On December 19, 2013, the jury found the Petitioner guilty. CR 170. The trial court entered a judgment of conviction and sentenced the Petitioner to forty years of incarceration that same day.  CR 172.  The First District Court of Appeals affirmed the Petitioner's conviction in an unpublished opinion.

## STATEMENT OF PROCEDURAL HISTORY

On September 1, 2015, the First District Court of Appeals affirmed the Petitioner's conviction.  *Brown v. State*, No. 01-14-00026-CR (Tex.App. – Houston [1st Dist. 2015).  No motion for rehearing was filed.

## GROUNDS FOR REVIEW

I.      The Court of Appeals erred in finding that the evidence was legally sufficient to support the Petitioner's conviction. Granting this Petition will provide this Court with an additional factual template for reexamining the need for a factual sufficiency analysis and for reconsidering *Brooks v. State*, 323 S.W.3d 893 (Tex.Crim.App. 2010), which it already agreed to review in *Walker v. State*, No. PD-1429-14 (Tex.Crim.App. pet. granted October 15, 2015).

## REASONS FOR GRANTING REVIEW

I.      The Court of Appeals' decision conflicts with an applicable decision of the Court of Criminal Appeals on an important question of state law. Tex.R.App.P. 66.3(c).

II.     This Court should reconsider its prior holding in *Brooks* because a legal sufficiency analysis does not adequately protect a defendant's right to be convicted only when a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt pursuant to *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979). *Proctor v. State*, 967 S.W.2d 840, 841 (Tex.Crim.App. 1998) ("We granted the State's petitions for discretionary review in these two cases to reconsider our prior holdings that the State, as part of its burden of proof in a criminal prosecution, must always prove beyond a reasonable doubt

2

that the prosecution is not limitations-barred, even if the defendant does not raise the issue.").

## STATEMENT OF SIGNIFICANT FACTS

On the evening of July 25, 2012, the Petitioner's co-defendant at trial, Larry Solomon, fatally shot Claude Kibbie. Court of Appeals Memorandum Opinion, App. 2. While eyewitness testimony placed the Petitioner in the area that night, there was no evidence that the Petitioner acted with intent to promote or assist Solomon's murder of Kibbie by soliciting, encouraging, directing, aiding, or attempting to aid Solomon in committing the offense. No eyewitness testified that the Petitioner served as a lookout; that he agreed to any plan that Solomon had to kill Kibbie; that he threatened Kibbie; that he brandished a gun on Kibbie; or that he solicited, encouraged, directed, aided, or attempted to aid Solomon.

The Court of Appeals based its opinion in part on the testimony of eyewitnesses Sheteria Williams, Petrina Branch, Margie Hubbard, and Lakresha Burnett. But the only significant facts that the Court of Appeals garnered from their testimony were the following.

Williams, who did not know Solomon and the Petitioner, had been sitting in her car in the parking lot of the apartment complex that evening. She saw Solomon and the Petitioner standing together near one of the apartment buildings and the Petitioner walking back and forth around the area, repeatedly circling the buildings.

3

App. 6. She found it particularly suspicious because she had seen him sitting in Kibbie's car with Kibbie for approximately 30 minutes earlier that evening. Williams heard Solomon tell the Petitioner, "We got to get him today." App. 7.

However, when the Court of Appeals wrote that "Brown nodded in response" (App. 2, 7), it mischaracterized Williams's testimony. In response to the question, "Did he nod his head in any specific manner?" Williams testified, "No." 4 RR 132. The Court of Appeals also omitted mention of the fact that Williams, who could see "everything that was going on" that night (4 RR 185), did not see the Petitioner go anywhere near Kibbie's car again after he had gotten out of the car (4 RR 208-210), and in fact never saw the Petitioner again that night after he went around the building for the last time. 4 RR 207-208.

Branch, who was sitting with Williams in the car, saw the two men described by Williams and that they were "hiding," "peeking" around the buildings, and "looking around the corner." App. 6.[1] She had a feeling the two men were "up to something." App. 7. According to the Court of Appeals, Branch testified that she saw the handle of a gun tucked into the clothing of a man who was later identified as the Petitioner. App. 7. However, the Court of Appeals ignored Branch's

---

[1] The Court of Appeals failed to acknowledge that Branch could not identify Brown as one of those two men. 3 RR 190-193.

4

subsequent unequivocal declarations that she did not see a weapon on that person. 3 RR 214-215, 220-222.

Hubbard, a self-proclaimed "nosy" neighbor, who had known Solomon for several years and who recognized Brown, had seen Solomon and Brown "running back and forth and talking," and looking toward Kibbie's car before the shooting. App. 6. She described the men's behavior as "very suspicious." She testified that she heard "them" (she did not specify who made these statements, 3 RR 263-264) saying, "We're going to get him," and "It's going to be on." App. 7. Although Hubbard saw the Petitioner next to Kibbie's car shortly before Solomon shot Kibbie (3 RR 257), she testified that there were about four men standing around next to Kibbie's car before Kibbie was shot. 4 RR 9.

Burnett saw a man who was standing on the passenger side of Kibbie's car pull out a gun and run alongside the car. Although Burnett did not positively identify Brown, she described the man she saw as taller and having lighter skin than the shooter, which was consistent with the other witnesses' descriptions of Brown. App. 7.

I.     THE COURT OF APPEALS ERRED IN FINDING THAT THE EVIDENCE WAS LEGALLY SUFFICIENT TO SUPPORT THE PETITIONER'S CONVICTION. GRANTING THIS PETITION WILL PROVIDE THIS COURT WITH AN ADDITIONAL FACTUAL TEMPLATE FOR REEXAMINING THE NEED FOR A FACTUAL SUFFICIENCY ANALYSIS AND FOR RECONSIDERING *BROOKS V. STATE*, 323 S.W.3D 893 (TEX.CRIM.APP. 2010), WHICH IT ALREADY AGREED TO REVIEW IN *WALKER V. STATE*, NO. PD-1429-14 (TEX.CRIM.APP. PET. GRANTED OCTOBER 15, 2015)

Like *Walker*, this case illustrates the issues that arise when a Court of Appeals cannot conduct a factual sufficiency analysis and is limited to a legal sufficiency review. In analyzing legal sufficiency, a Court of Appeals will view the evidence in the light most favorable to the verdict to decide whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson, supra; Brooks, supra* at 895. Juries may "draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial," *Hooper v. State*, 214 S.W.3d 9, 15 (Tex.Crim.App. 2007), but they "are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Id.*[2]

While an appellate court "may not re-evaluate the weight and credibility of the record evidence and thereby substitute [its] judgment for that of the fact-finder,"

---

[2] Basing an inference upon other inferences constitutes the impermissible inference stacking. *Reedy v. State*, 214 S.W.3d 567, 585 (Tex.App. – Austin 2006, pet. ref'd), *abrogated by Hooper, supra* at 15-17.

*Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010), that is exactly what the Court of Appeals had to do in this case in order to view the evidence in the light most favorable to the verdict. Moreover, in order to affirm the jury's verdict, the Court of Appeals also necessarily had to base several of its factual conclusions on factually unsupported inferences. Such a tortuous line of reasoning shows why some version of a factual sufficiency test[3] is still needed.

In this case, the legal sufficiency standard allowed the Court of Appeals to infer that the Petitioner acted with intent to promote or assist Solomon's murder of Kibbie by soliciting, encouraging, directing, aiding, or attempting to aid Solomon in committing the offense. Tex. Penal Code §7.02(a)(2). But the only way that the Court of Appeals could make those inferences and affirm the jury's conviction was, like the Twelfth Court of Appeals did in *Walker*, to impermissibly select and weigh the evidence and pile inference upon inference.

In fact, the Court of Appeals did that in this case at least four times in order to justify the jury's verdict within the confines of the legal sufficiency test and uphold the Petitioner's conviction. If the Court of Appeals had been permitted to test the factual sufficiency of the evidence, it is likely that it would have simply found that

---

[3] "Evidence may be factually insufficient if: '1) it is so weak as to be clearly wrong and manifestly unjust or 2) the adverse finding is against the great weight and preponderance of the available evidence.'" *Berry v. State*, 233 S.W.3d 847, 854 (Tex.Crim.App. 2007).

the evidence against the Petitioner was so weak as to be clearly wrong and manifestly unjust and would not have had to base its decision upon unsupported inferences in order to uphold this conviction under the legal sufficiency test.

First, when the Court of Appeals found that the Petitioner was standing near the passenger side of Kibbie's car when Kibbie began moving it and then ran alongside, pointing a gun at Kibbie immediately before Kibbie was shot (App. 2), it engaged in impermissible weighing of the evidence and impermissibly based an inference upon a factually unsupported inference. In order for it to have found that the Petitioner was standing near the passenger side of Kibbie's car or that he ran alongside the car brandishing a gun immediately before Kibbie was shot, the Court of Appeals had to weigh the evidence by ignoring Williams' testimony that she did not see the Petitioner go anywhere near Kibbie's car again after he had gotten out of the car some time before the shooting. 4 RR 207-210.

Then, the Court of Appeals had to base an inference upon a factually unsupported inference in order to arrive at this finding. It was not a fact that the Petitioner brandished a gun at Kibbie; it was only an inference because no witness identified the Petitioner as the person who was outside the car with a gun. The witness who saw a man with a gun alongside Kibbie's car, Lakresha Burnett, did not identify that man as the Petitioner. She testified only that she saw a light skinned black male with a gun by the car. 3 RR 150-152, 155. Further, she never saw this

8

light skinned black man with Solomon. They were not together as far as she knew. Thus, in order for the Court of Appeals to have found that the Petitioner was standing outside Kibbie's car brandishing a gun at him, the Court of Appeals had to 1) take the fact that a light skinned black male was seen with a gun by the car, 2) infer that that man was the same man who was seen with Solomon at other times that evening, and then 3) infer that that man was in fact the Petitioner despite the fact that another witness testified that she did not see the Petitioner near the car with a gun.

This Honorable Court's directions to the lower courts simply do not permit such weighing of the evidence and application of multiple inferences, *Hooper, supra*, but the Court of Appeals took such actions in order to comply with this Honorable Court's other mandate that the Courts of Appeals must view the evidence in the light most favorable to the verdict to decide whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson, supra; Brooks, supra* at 895. Bringing back some form of a factual sufficiency test will allow the lower courts to stop tying themselves in knots in order to fit their analysis of difficult fact patterns within the confines of the legal sufficiency test.

Second, in order for the Court of Appeals to have found that, while watching Kibbie, Solomon and the Petitioner talked about their plan to get Kibbie (App. 8), the Court of Appeals had to weigh the evidence by ignoring the fact that no witness

9

heard Solomon and the Petitioner talking about a plan to get Kibbie. In fact, the opposite is true. Only Solomon said anything during that conversation. 4 RR 131. No eyewitness testified that she heard the Petitioner speak in response to Solomon's statement. Williams testified that the Petitioner nodded to Solomon's statement, but not in response to that statement. 4 RR 132. And Hubbard, who also heard the statement, did not specify who said what. 3 RR 263-264.

Third, in order for the Court of Appeals to have found that, after Solomon told the Petitioner, "We got to get him today," the Petitioner nodded in response (App. 2), the Court of Appeals had to ignore Williams's testimony that the Petitioner did not nod in response. 4 RR 132.

Fourth, in order for the Court of Appeals to have found that Branch saw the handle of a gun tucked into the clothing of a man who was later identified as the Petitioner (App. 7), the Court of Appeals had to ignore Branch's unequivocal declaration that she did not see him with a weapon. 3 RR 214-215, 220-222. In fact, Branch testified four times that she did not see that person with a weapon. *Id.* The Court of Appeals thus impermissibly weighed the evidence to find that Branch saw a man with a gun who was later identified as the Petitioner.

The Court of Appeals summarized the evidence as follows:

> The evidence showed that Brown repeatedly walked around the buildings, stopping to talk to Solomon and peer at Kibbie. From this evidence, a jury could infer that he was keeping a lookout of the entire area. The evidence also shows that while watching

10

> Kibbie, the two men talked about their plan to "get him." In addition, the evidence showed that Brown had a gun and pointed it at Kibbie as he attempted to leave the parking lot. Finally, the evidence showed that Brown fled the apartment complex. Considering this evidence together, the jury could have concluded that Brown was more than merely present: he aided or participated in the crime.
>
> . . .
>
> A rational jury could have concluded that Brown aided or participated in the offense committed by Solomon by keeping watch while repeatedly walking around the apartment complex, agreeing to "get him," and carrying and brandishing a gun.

App. 7-9.

But when the Court of Appeals' impermissible weighing of the evidence and impermissible basing of factual conclusions on factually unsupported inferences are removed, the only factually supported findings that remain are that the Petitioner walked around the apartment complex a number of times while looking around, talked with Solomon, **heard** Solomon say, "We got to get him today" (but did not respond verbally or assent), and ran away after the shooting. Contrary to the Court of Appeals' finding, the jury heard no factually supported evidence that the Petitioner had a gun and pointed it at Kibbie or that the Petitioner and Solomon **talked** about **their** plan to get Kibbie.

When the Court of Appeals held that a rational jury could have concluded that the Petitioner aided or participated in the offense committed by Solomon by keeping watch while repeatedly walking around the apartment complex, agreeing to "get

11

him," and carrying and brandishing a gun, it could only have done so by picking and choosing which facts and testimony to believe, by basing inferences upon factually unsupported inferences, and by effectively criminalizing otherwise legal conduct. This decision making process violated this Honorable Court's instructions and must be corrected.

Although the Petitioner did repeatedly walk around the apartment complex, there was no evidence, only unsupported inferences, that the walking around was to "keep watch." The evidence flatly contradicts the Court of Appeals' findings that the Petitioner agreed to "get him" and that he carried and brandished a gun. The Court of Appeals' inferences were not supported by the evidence presented at trial. Because the Court of Appeals' inferences were not supported by the evidence at trial, they could only have been based upon factually unsupported inferences, not facts proven at trial. *See Hooper, supra* at 16.

Like in *Walker*, the legal sufficiency standard allowed the Court of Appeals to infer the Petitioner's intent to aid Solomon in committing a criminal offense in spite of the fact that there was no evidence that implicated the Petitioner in this offense. The Court of Appeals could only have arrived at its decision by impermissibly weighing the evidence and making inferences based on factually unsupported inferences.

12

This is why some form of a factual sufficiency analysis must be restored. It will permit a Court of Appeals to follow *Brooks's* guidance and mandate that it view the evidence in the light most favorable to the verdict to decide whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt while still following *Hooper's* instruction to avoid coming to conclusions based on mere speculation or factually unsupported inferences or presumptions. A factual sufficiency analysis will also permit a Court of Appeals to reverse a conviction if it is so weak as to be clearly wrong and manifestly unjust or if it was against the great weight and preponderance of the evidence. *Berry, supra.*

In this case, the Court of Appeals impermissibly weighed the evidence, disregarded uncontradicted evidence, and based its factual findings on inferences that were based upon factually unsupported inferences in an effort to uphold the Petitioner's conviction under the legal sufficiency standard. This was error, and this Honorable Court should exercise its discretion to review this decision under Tex.R.App.P. 66.3(c) and *Proctor, supra.*

## PRAYER

For the above reasons, the Petitioner respectfully prays that this Honorable Court grant discretionary review in this matter, reverse the First District Court of Appeals, and enter a judgment of acquittal on the grounds that the evidence against the Petitioner was legally insufficient to sustain his conviction.

Respectfully submitted,

*/s/ Robert L. Sirianni, Jr., Esq.*
Robert L. Sirianni, Jr., Esq.
SBOT No. 24086378
BROWNSTONE, P.A.
201 N. New York Avenue
Winter Park, Florida 32789
Telephone: (407) 388-1900
Facsimile: (407) 622-1511

## CERTIFICATE OF SERVICE

I hereby certify that on 30th day of October, 2015, a true and correct copy of the foregoing Petition has been forwarded to all counsel of record on this date by regular mail or through the State of Texas Electronic Filing System.

*/s/ Robert L. Sirianni, Jr., Esq.*
Robert L. Sirianni, Jr., Esq.

## CERTIFICATE OF COMPLIANCE WITH TEX.R.APP.P. 9.4

I hereby certify that this document complies with the type-volume limitations because it is computer-generated and does not exceed 4,500 words. Using the word-count feature of Microsoft Word, the undersigned certifies that this document contains 1,988 words in the entire document excluding the following sections: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix. This document also complies with the typeface requirements because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ Robert L. Sirianni, Jr., Esq.
Robert L. Sirianni, Jr., Esq.

# APPENDIX



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00026-CR

————————————

**KERRY BROWN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 338th District Court
Harris County, Texas
Trial Court Case No. 1356491

## MEMORANDUM OPINION

A jury convicted appellant Kerry Brown of murder, and the trial court assessed punishment at 40 years in prison. *See* TEX. PENAL CODE § 19.02. On appeal, Brown challenges the sufficiency of the evidence and allegedly improper statements made by the prosecutor during closing argument.

We affirm.

## Background

On July 25, 2012, complainant Claude Kibbie drove his blue Ford Taurus to the Crofton Place apartment complex where Darrell Lazard lived. Lazard sometimes did mechanic work for neighbors, and Kibbie sought his help. That evening, appellant Kerry Brown was seen in the area with his codefendant at trial, Larry Solomon. Several witnesses saw Brown circling the apartment complex, walking "back and forth," "watching out," and stopping to talk to Solomon after each pass around the buildings. Both men were seen repeatedly peering toward Kibbie. A witness saw the handle of a gun that was tucked into Brown's clothing. At one point, Solomon told Brown, "We got to get him today," and Brown nodded in response. Later Brown spent approximately 30 minutes speaking with Kibbie while they sat in the Taurus.

Around 10:00 p.m., Brown was standing near the passenger side of the Taurus when Kibbie backed up the car and then began to drive it forward. Brown ran alongside, pointing a gun at Kibbie. Solomon also chased the car, and he fired multiple gunshots, one of which struck Kibbie in the head. Kibbie's car crashed into an apartment building, and he later died from the gunshot wound. Solomon and Brown fled the scene.

Police responded, and Sergeant E. Cisneros began an investigation. Based on anonymous tips, interviews with witnesses, and positive identifications from photographic lineups, Sgt. Cisneros identified Solomon and Brown as suspects in the murder.

Solomon and Brown were arrested, charged with murder, and tried together. At trial, several neighbors testified about what they witnessed that night. Brown presented three alibi witnesses, but cross-examination revealed inconsistencies in their testimony. In its closing statement, the State argued that Kibbie and Brown struggled over Brown's gun, which fell apart as evidenced by broken pieces of a gun recovered from Kibbe's vehicle. Solomon's attorney objected that this argument was not supported by the evidence, but Brown made no objection. Because there was eyewitness testimony that Solomon shot Kibbie, the jury charge as to Brown included instructions on the law of parties. The jury found Brown guilty of murder, and he appealed.

## Analysis

Brown raises two issues on appeal. First he challenges the sufficiency of the evidence to support the jury's verdict. Second he argues that the State's improper jury arguments require reversal.

## I. Sufficiency of the evidence

When evaluating an evidentiary-sufficiency challenge, we consider all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). The standard is the same for both direct and circumstantial evidence cases. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013); *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).

We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. *See Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). We presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). On appeal we may not re-evaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). In reviewing the evidence, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial

evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The Penal Code provides that a person commits murder if he "intentionally or knowingly causes the death of an individual" or "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE § 19.02(b)(1) & (2). A person may be guilty as a party to an offense committed by another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *See id.* § 7.02(a)(2). In determining whether one has acted as a party in the commission of a criminal offense, the court may look to events occurring before, during, and after the commission of the offense. *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006). "Circumstantial evidence alone may be used to prove that a person is a party to an offense." *Id.* at 506. "Participation in an enterprise may be inferred from the circumstances and need not be shown by direct evidence." *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987). Mere presence of the defendant at the scene is not sufficient to support a conviction; however it may suffice to show that the defendant was a participant when combined with other facts. *See Powell*, 194 S.W.3d at 507–08; *Beardsley*, 738 S.W.2d at 685.

Brown argues that there is no evidence that he was a party to the crime. In particular he argues that there was no evidence that he served as a lookout or otherwise cooperated with Solomon, the shooter.

Three witnesses testified about Brown's behavior that evening. A jury could infer from that testimony that Brown aided in the commission of the offense by acting as a lookout. Sheteria Williams was sitting in her car in the parking lot on the evening of the shooting. She saw Solomon and Brown standing together near one of the apartment buildings. Williams did not know the men, and she did not know their names at the time of the shooting, but she later identified both men from photographic lineups and in open court. She testified about a shorter, darker-skinned man, whom she identified as Solomon, and a taller, lighter-skinned man, whom she identified as Brown. Williams testified that she saw Brown walking back and forth around the area, repeatedly circling the buildings. A second witness, Petrina Branch, was also sitting in Williams's car immediately prior to the shooting. She testified that she saw the two men described by Williams and that they were "hiding," "peeking" around the buildings, and "looking around the corner." Finally, Margie Hubbard, a self-proclaimed "nosy" neighbor, had known Solomon for several years. She also recognized Brown. Before the shooting, she saw Solomon and Brown "running back and forth and talking," and looking toward Kibbie's car.

All three witnesses—Williams, Branch, and Hubbard—testified that the behavior of Solomon and Brown was suspicious. Williams found it particularly suspicious because she had seen Brown sit in Kibbie's car with him for approximately 30 minutes earlier that evening. Branch testified that she had a feeling the two men were "up to something." Hubbard, who had been watching from her apartment window, described the men's behavior as "very suspicious." In addition to being suspicious of their actions, Williams was also suspicious because she overheard Solomon tell Brown, "We got to get him today," and she saw Brown nod in response. Similarly, Hubbard testified that she heard "them" saying, "We're going to get him," and "It's going to be on."

The State also introduced evidence that Brown had a gun. Branch testified that she saw the handle of a gun tucked into the clothing of the taller man, who was later identified as Brown. Lakresha Burnett testified that she was retrieving a bag from her car when she saw a man who was standing on the passenger side of the blue Taurus pull out a gun and run alongside the car. Although Burnett did not positively identify Brown, she described the man she saw as taller and having lighter skin than the shooter, which was consistent with the other witnesses' descriptions of Brown.

The evidence showed that Brown repeatedly walked around the buildings, stopping to talk to Solomon and peer at Kibbie. From this evidence, a jury could

infer that he was keeping a lookout of the entire area. The evidence also shows that while watching Kibbie, the two men talked about their plan to "get him." In addition, the evidence showed that Brown had a gun and pointed it at Kibbie as he attempted to leave the parking lot. Finally, the evidence showed that Brown fled the apartment complex. Considering this evidence together, the jury could have concluded that Brown was more than merely present: he aided or participated in the crime. *See Beardsley*, 738 S.W.2d at 684–85.

Brown argues that Williams had "serious credibility issues." However, the determination of the witnesses' credibility and the resolution of inconsistencies in testimony are committed to the jury, and on appeal we may not substitute our judgment for that of the factfinder. *See Williams*, 235 S.W.3d at 750.

Finally, Brown challenges the relevance and sufficiency of evidence that he struggled with Kibbie over a gun. He concedes that the State recovered parts of a broken gun from Kibbie's car, but he argues that none of the parts of the gun were connected to him by DNA or fingerprint evidence and such speculation could not form the basis of his conviction. Although the State may have argued this theory to the jury, it comprised no part of the elements of the offense that the State was required to prove. As we have explained, a rational jury could have concluded that Brown aided or participated in the offense committed by Solomon by keeping watch while repeatedly walking around the apartment complex, agreeing to "get

him," and carrying and brandishing a gun. Thus, we hold that, without regard to evidence pertaining to broken gun parts, the evidence was legally sufficient to support the jury's verdict. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Merritt*, 368 S.W.3d at 525.

We overrule Brown's first issue.

## II. Jury argument

In his second issue, Brown argues that the State's improper jury argument warrants reversal. First he argues that the prosecutor argued about facts that were not in evidence, specifically that Kibbie and Brown struggled over a gun that fell apart and that Brown served as a lookout and "set-up" for Kibbie. Next, he argues that the prosecutor abused his position of authority by insinuating that the State had special knowledge of the facts of the case. Finally, he argues that the prosecutor improperly appealed to the jurors' sense of civic duty, which he contends implied that the community was expecting a certain verdict or punishment.

"A defendant's failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal." *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *see* Tex. R. App. P. 33.1(a). A defendant is generally unable to rely on an objection made by a co-defendant's counsel, without voicing his own objection. *Martinez v. State*, 833 S.W.2d 188, 191 (Tex. App.—Dallas

1992, pet. ref'd) (citing *Lerma v. State*, 679 S.W.2d 488, 498 (Tex. Crim. App. 1982)). "A co-defendant may adopt the objection of his fellow defendant, but that adoption must be reflected in the record." *Enlow v. State*, 46 S.W.3d 340, 346 (Tex. App.—Texarkana 2001, pet. ref'd); *see also McGowan v. State*, 938 S.W.2d 732, 736 (Tex. App.—Houston [14th Dist.] 1996), *aff'd sub nom. Weightman v. State*, 975 S.W.2d 621 (Tex. Crim. App. 1998); *Brooks v. State*, No. 01-04-00092-CR, 2005 WL 327192, at *11 (Tex. App.—Houston [1st Dist.] Feb. 10, 2005, pet. struck) ("A co-defendant who does not voice her own objection at trial has not preserved error.").

Brown made no objection to the prosecutor's arguments that he challenges on appeal. While defense counsel for Solomon objected that the State was relying on facts not in evidence, Brown and his trial counsel were silent during the objections made by Solomon's attorney. We therefore hold that Brown failed to preserve any objection to the State's jury argument. *See Valencia v. State*, 946 S.W.2d 81, 82–83 (Tex. Crim. App. 1997) (holding that court of appeals correctly found waiver when appellant made no objection at trial to State's allegedly improper jury argument); *Cockrell*, 933 S.W.2d at 89 (holding that "a defendant's 'right' not to be subjected to incurable erroneous jury arguments . . . is forfeited by a failure to insist upon it").

We overrule Brown's second issue.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).